25b 199|
7ap481|

## THE PEOPLE vs. THE NEW YORK CENTRAL RAIL ROAD COMPANY.

Under the 39th section of the general rail road act of 1850, which requires that a bell or steam whistle shall be placed on each locomotive engine, and be rung or sounded at the distance of at least eighty rods from the place where the rail road shall cross any traveled public road or street, and be kept ringing or sounding until the engine shall have crossed such road or street, under a penalty of twenty dollars for every neglect of that provision, a rail road company incur the penalty as often as they cross a road with a locomotive engine without giving the required signal.

The statute is not to be construed as requiring the ringing of a bell, or sounding of a whistle, only when the rail road and highway cross upon the same level.

Accordingly *held*, where the track and grade of a rail road was elevated above the grade or level of the highway fifteen feet, and the rail road passed over the highway, upon a bridge, at an elevation of fifteen feet above the highway—travelers upon the highway passing under the rail road without danger of collision with the engines—that the rail road company was not excused from making the required signal, on crossing the highway with its engines.

ACTION brought to recover several penalties of $20 each, given by the 39th section of the rail road act of 1850, for causing a locomotive engine to run and pass on the road of the defendants across a traveled public road in the county of Herkimer, without ringing a bell or sounding a steam whistle, eighty rods from the crossing. The action was tried before Justice PRATT, at the circuit held in Herkimer county, in May, 1854, and it was proved that on the 31st day of October and the 1st day of November, 1853, the defendants caused several of their locomotive engines with freight and passenger trains to be run on and along the rail road across a public traveled road, without ringing any bell, or sounding any whistle, and in all to the number of twenty-seven times. It appeared by the cross-examination of the plaintiffs' witnesses, that at the crossing referred to, the track and grade of the rail road is elevated above the grade or level of the highway fifteen feet, and the rail road passes over the highway, upon a properly constructed bridge, at an elevation of fifteen feet above the highway, and that travelers upon the highway pass under the rail road without danger of collision with the engines passing upon the rail road. The judge ordered a verdict for the plaintiffs, for the penalties given by the statute,

subject to the opinion of the court upon a case to be made by the plaintiffs, with leave to either party to turn the same into a bill of exceptions.

*V. Owen*, dist. attorney of Herkimer county, for the plaintiffs.

*F. Kernan*, for the defendants.

*By the Court*, W. F. ALLEN, J. By the 39th section of the general rail road act of 1850, (*Sess. Laws, p.* 232,) it is enacted that a bell shall be placed on each locomotive engine, and be rung at the distance of at least eighty rods from the place where the rail road shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street ; or a steam whistle shall be attached to each locomotive engine, and be sounded at least eighty rods from the place where the rail road shall cross any such road or street, except in cities, and be sounded at intervals until it shall have crossed such road or street, under a penalty of twenty dollars for every neglect of this provision ; and the corporation is made liable for all damages which shall be sustained by any person by reason of such neglect.

It is claimed by the counsel for the defendants, 1. That the section does not create a penalty for each omission to ring the bell or sound the steam whistle on approaching a highway, but gives a penalty only for a single omission. But the law requires the signal to be given upon the approach to the crossing of *each* locomotive engine, and gives a penalty of twenty dollars for *every* neglect of this duty ; and upon any fair reading of the section in the light of the clearly expressed intent of the legislature, the company necessarily incur the penalty as often as they cross the road with a locomotive engine without giving the required signal. Any other construction would be a palpable evasion of the letter as well as the spirit of the act, and the public would be deprived of that protection from danger which the provision was designed to give.

2d. It is insisted that the true construction of the statute

The People v. New York Central Rail Road Company.

would not require the ringing of a bell or sounding a whistle except when the rail road and highway crossed upon the same level, and that therefore the case made by the plaintiffs was not within the act, and did not entitle them to recover the penalty. The provision of the section under review, while penal so far as it adds the sanction of a pecuniary penalty to the duty enjoined upon a rail road corporation, is also beneficial to the public by providing securities against some of the hazards incident to the use of locomotive engines upon rail roads. Penal statutes are to be construed strictly; that is, they are not to be extended by construction so as to subject to their provisions acts not within their terms, properly understood; and if a case chance to be within the letter of a penal statute, yet if it is clearly not within any of the mischiefs which were intended to be reached by it, it will be held not to be governed by it, as it was manifestly not in the minds of the passers of the act or within the intent of the legislature. (*Edwards* v. *Dick*, 4 B. & Ald. 212. *Sprague* v. *Birdsall*, 2 *Cowen*, 419. *Van Valkenburgh* v. *Torrey*, 7 id. 252.)

One general rule, however, is to be observed in the construction of all statutes, and that is, that the intention of the legislature must prevail. Ordinarily, that intention will be gathered from the act itself and other acts in *pari materia*, and in that case there is no room for conjecture or construction, but the intent thus manifested will be carried into effect. When words are obscure or doubtful, the intention of the legislature may be resorted to, in order to find the meaning of the words. When the words employed are neither obscure nor doubtful, and plainly express the intent of the legislature, there is no room for interpretation, but the statute is to be carried into effect according to its natural and obvious reading. (*The People* v. *The Utica Insurance Company*, 15 *John. R.* 358. *Jackson* v. *Collins*, 3 *Cowen*, 89.) Marshall, Ch. J., in *United States* v. *Wiltberger*, (5 *Wheat.* 76,) speaking of the rule that penal statutes are to be construed strictly, says, "The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words in their ordinary acceptation or in that

sense in which the legislature has obviously used them, would comprehend." The intention of the legislature is to be collected from the words they employ. When there is no ambiguity in the words there is no room for construction. In *Sickles* v. *Sharp*, (13 *John.* 497,) Spencer J., says, " The rule that penal statutes are to be construed strictly when they act on the offender, and inflict a penalty, admits of some qualification. In the construction of statutes of this description, it has been often held that the plain and manifest intention of the legislature ought to be regarded. A statute which is penal to some persons, provided it is beneficial generally, may be equitably construed." ·

The people have an interest in the observance, by rail road corporations, of those rules which have been prescribed for the safety of those having occasion to travel upon the public highways, and to this extent the act is beneficial to the public, and should receive that reasonable construction which the language employed will justify, and which will best secure to the public the benefits designed by the provisions. Ordinarily, but little advance is made in the construction and right understanding of a statute by attempting to give to the words a highly technical or critical meaning and application, for the reason that it is not in that sense they are used by legislators in passing enactments, and hence a resort to lexicographers is, except in rare cases, of but little service. Words should be taken as used in their popular and most obvious sense, and while " cross," when used as a verb, may and does frequently mean to intersect, as to lay a body across another, as to cross a word in writing, and should, when used in some connections, receive that construction, it is equally true that it also means, as defined by lexicographers as well as in ordinary parlance, " to pass from side to side ;" " to pass or move over," as to cross a road or a river, which may be done by passing upon a bridge elevated above the level of the road or river passed. As a preposition it means " over," " from side to side." In ordinary and popular phrase the word is used indifferently to express the passing from side to side of a given object, whether the passage is effected by moving directly upon the object crossed, or by passing over it at an elevation ; a bridge

The People *v.* New York Central Rail Road Company.

is said to cross a river; a man is said to have crossed a river who has passed over it upon a bridge which does not come in contact with the river. Whether these phrases are or are not strictly accurate is not material. They convey a definite idea to the mind, and are and were at the time of the passing of the act in question, well understood as a part of the language of the people, and as a recognized expression in common use. The hazards to be provided against were twofold; (1) the danger of actual collision at the crossing, and (2) that of damage by the frightening of teams traveling upon the public highway; and to guard against the latter peril it was as important to provide for a proper warning when the rail road passed over the highway at an elevation which allowed a passage upon the highway underneath as when it passed upon the same level, to enable those passing upon the highway to place their teams in such positions of security as would best guard against injury from their fright. But whatever may have been the reason, it is sufficient that the legislature have deemed the performance of this duty, which is not onerous upon the company, sufficiently beneficial to the public to secure its performance by the imposition of a penalty.

Again; although in perhaps a majority of modern legislative acts, but little weight should be given to the particular manner in which words are used in statutes, and the change of expression in the different sections, as it is a matter of notoriety that statutes are not often drawn, or in their passage through the legislature examined, with proper care, or by those who, by their previous habits and learning are qualified for the task, the act under consideration is an exception. The general rail road act was passed with great care, as is evident from its tenor, and we may refer to its different provisions as throwing light upon each other and upon the whole act. By referring to the 40th section it will be seen that a further security against actual collisions between rail road engines and ordinary teams using the highway at rail road crossings is provided, by requiring a post and printed sign to be placed at such crossings where the highway is crossed by the rail road at the same level; showing manifestly that the legislature had in mind the distinction between

crossing simply, and crossing at the same level, and designed to make distinct provisions suitable to each case. Had it not been intended to distinguish between the cases, and to give to the term cross, as used in the 39th section, the meaning which we have attributed to it, the 40th section would have been unnecessary, and its provisions might have made a part of the 39th. At all events there was no reason to change the form of expression in the two sections of a well drawn act, unless it was intended to distinguish in their application.

We are of opinion that judgment upon the case should be given for the plaintiffs.

HUBBARD, J., dissented.

Judgment for the plaintiffs.