Billman *v.* The Indianapolis, Cincinnati and Lafayette Railroad Co.

No. 7375.

BILLMAN *v.* THE INDIANAPOLIS, CINCINNATI AND LAFAYETTE RAILROAD CO.

NEGLIGENCE.—*Damages.*—*Railroad.*—*Complaint.*—A complaint against a railroad company, alleging that its servants and agents managed and operated its locomotive and cars in such a recklessly and culpably negligent manner as to wilfully and wrongfully cause a team of horses to take fright and run away, and that, because of such fright, and while unmanageable and running away, they ran against the plaintiff's horse and caused its death, contains facts sufficient to constitute a cause of action.

SAME.—*Intervening Cause.*—*Agency.*—In such case, the fact, that between the wrongful act of the company and the injury complained of was an intervening cause, is not sufficient to defeat a recovery. An intervening agency does not always shield the wrong-doer from responsibility, where the injury flows from his wrongful act.

SAME.—*Proximate Cause.*—The maxim, *causa proxima, et non remota, spectatur,* is not applicable to the case made in the complaint.

SAME.—Proximate or immediate and direct damages are the ordinary, natural and usual results of an injury, and, being probable, may therefore be expected.

SAME.—In such case, the injury sued for was the usual and proximate result of the wrongful act of the company, showing, not passive negligence but wanton and wilful wrong.

SAME.—*Fright of Animal.*—The liability of horses to take fright at unusual noises or objects is a thing to be apprehended and guarded against; and the wrong-doer, who does an act likely to cause horses to take fright, must be deemed to be responsible for injuries caused by horses running away under the influence of the fright.

SAME.—*Steam Whistle.*—Negligently and wantonly sounding a steam whistle, so that horses lawfully near are caused to run off and inflict an injury, renders a railroad company liable to the one injured by the intervening agency. Facts showing a necessity, or a reasonable excuse, for the use of the whistle, render a different rule applicable.

From the Shelby Circuit Court.

*O. J. Glessner* and *E. S. Stilwell*, for appellant.

*L. J. Hackney*, for appellee.

ELLIOTT, J.—This appeal presents the question of the sufficiency of the complaint of appellant, by whom this action was instituted.

It is unnecessary to do more than state, in bare outline, the allegations of the complaint, for the objections urged against it here, and which prevailed against it in the trial court, are of such a character as to require only a very general statement from us. It is alleged that the servants and agents of the appellee managed and operated the locomotive and cars of the railway company in such a recklessly and culpably negligent manner, as to wilfully and wrongfully cause a team of horses, belonging to one Zero Carter, to take fright and run away, and that, because of such fright, and while unmanageable and running away, they ran against the horse of appellant and caused its death.

In a carefully prepared and very able brief, appellee's counsel urges that no cause of action is shown, because the result was one which the appellee's servants could not have anticipated, and because the injury was not the proximate result of the negligence of the servants of the appellee. The argument is built, and built with skill, upon the maxim, *causa proxima, et non remota, spectatur.*

It is true, as urged by counsel, that the injury alleged as the cause of action did not directly and immediately result from appellee's negligence, for there was an intervening agency. The premise is well assumed, and the question is: Does the conclusion drawn by the appellee logically follow? If the maxim quoted is to be given the wide sweep which appellee claims, then, wherever there is an agency intervening between the original cause and the injury, there can be no recovery. This is not the law. An intervening agency does not always shield the wrong-doer from responsibility, where the injury flows from his wrongful act. This doctrine is a well established one. It is said, by an English writer of acknowledged ability and learning, that "The general rule of law, however, is, that whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervening agency of others, provided the intervening agents were set in motion by the primary wrong-doer." Addison Torts, sec. 12.

The very old and very famous case of *Scott* v. *Shepherd*, 2 W. Black. 892, distinctly declared that a wrong-doer, who wrongfully set in motion the agency which caused the injury, was liable, although, between him and the injury, there were intervening causes, and this case has received the unquestioning sanction of courts and authors. An eminent American author, in discussing this subject, says: "If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent." Cooley Torts, 70. The fact that, between the wrongful act of appellee and the

injury complained of, there was an intervening cause, is not sufficient to defeat a recovery.

The injury for which a recovery is sought is not so remote from the original wrong as to defeat the right to recover for the damages flowing from the injury. The wrong of appellee set in motion the cause which produced the injury. There are many cases which support the theory upon which appellant's complaint is rested. The case of *Thomas* v. *Winchester*, 6 N. Y. 397, is an important and instructive case upon this point. In that case a dose of dandelion was prescribed for a person who was at the time ill. The prescription was presented at the drug-store of Dr. Foord, and the medicine obtained, which was administered to the person for whom it was prescribed, and great suffering resulted from its use. It was afterward ascertained that the drug was belladonna, and not dandelion. The drug was taken from a jar of medicine prepared by the defendant, a manufacturing chemist, and which had been by him labelled as extract of dandelion. The defendant sold the jar and its contents to one Aspinwall, a wholesale dealer in drugs, by whom it was sold to Dr. Foord, the retail dealer, from whom the plaintiff purchased it. The court adjudged the defendant liable.

COCKBURN, C. J., in *Clark* v. *Chambers*, 7 C. L. J. 11, very carefully investigated the question here under examination, and in an opinion of great force held that the author of the original wrong was liable, although the act of another had wrongfully intervened. In that case the defendant had wrongfully placed a dangerous spiked hurdle in a private way along which the plaintiff had a right to pass. Some person, without the knowledge of the defendant, moved the hurdle a short distance. The plaintiff, in travelling the way in a dark night, and thinking to avoid the original portion of the hurdle, came into collision with it, and was injured. Judgment was given in his favor. Many cases were reviewed;

among them *Scott* v. *Shepherd*, 2 W. Bl. 892; *Dixon* v. *Bell*, 5 M. & S. 198; *Ilott* v. *Wilkes*, 3 B. & Ald. 304; *Illidge* v. *Goodwin*, 5 C. & P. 190; *Lynch* v. *Nurdin*, 1 Q. B. 29; *Burrows* v. *The March, etc., Co.*, L. R. 7 Exch. 96.

In *Ricker* v. *Freeman*, 50 N. H. 420, the general doctrine of liability, where there is an injury resulting from a remote wrong, is considered with care, and a result reached in harmony with the cases decided by the New York court.

The Supreme Court of Minnesota, in *Griggs* v. *Fleckenstein*, 14 Minn. 81, had occasion to apply the law to a case where the facts were, substantially, these: The defendant negligently left a team of horses, unhitched and unwatched, upon the street of a town. They ran away, and ran against the team of another person, hitched to a post on the street, caused it to take fright and run against a horse and sleigh of the plaintiff. It was held that the defendant could not escape liability upon the ground that the injury was too remote.

The case of *Weick* v. *Lander*, 75 Ill. 93, is a well reasoned and interesting case. The facts in that case, shortly stated, were that a builder wrongfully placed an obstruction in a public street of the city of Chicago. Two teams and wagons, employed in hauling sand, were passing upon the street, going south. When opposite the obstruction, an express wagon, moving north, ran against the obstruction and also struck and stopped the front sand wagon, and the tongue of the rear sand wagon ran against and killed a lad who was riding in the front sand wagon; and it was held that the builder was liable, because the wrongful obstruction was the cause of the boy's death.

There are several cases in the Supreme Court of Massachusetts, in which the question we have under examination is discussed, and discussed with learning and ability. In one of these cases, that of *Powell* v. *Deveney*, 3 Cush. 300, an empty truck was wrongfully left standing upon a public

street; on the opposite side of the street there was a loaded truck, to which a team of horses was attached. The driver of another truck, in attempting to pass between the horses' heads and the empty truck on the opposite side of the street, drove against the last mentioned truck, which caused the shafts of his truck to whirl around and injure a person walking along the sidewalk. And it was decided that the owner of the empty truck was liable to the injured person. Another of the cases in the reports of the State to which we have referred collects and reviews many of the earlier cases, and holds that the doctrine of the case last cited is the correct one. In the case under immediate mention, *McDonald* v. *Snelling*, 14 Allen, 290, a carriage was negligently driven against a team of horses, causing them to take fright, run away, and injure the plaintiff. In the opinion, the maxim upon which appellee relies was much discussed, and its true force and meaning explained. In still another case, *Lane* v. *Atlantic Works*, 111 Mass. 136, the same court gave the subject a very full examination, and held, that although the act of another wrong-doer intervened between the original wrong and the injury, the injured person was entitled to recover. The ruling, upon the point here mentioned, is thus stated in the reporter's note: "In an action to recover for injuries caused by the defendant's negligence, to which the fault of another person contributed, the defendant's liability is not affected by the fact that the fault of such person was not negligence, but voluntary wrong-doing, if it was conduct which they should have apprehended and provided against." This goes far beyond what we should be required to do to uphold the present case, for here the act of the person whose agency intervened was not only innocent, but was one which he could not have prevented, for it is shown that his horses were uncontrollable because of fright. There are other decisions of the Massachusetts court, which are well deserving of examination, but we have only time to refer,

without comment, to some of them: *Metallic C. C. Co.* v. *Fitchburg R. R. Co.*, 109 Mass. 277; *Lane* v. *Atlantic Works*, 107 Mass. 104; *Tutein* v. *Hurley*, 98 Mass. 211.

Two cases are cited by the appellee, *The Pennsylvania R. R. Co.* v. *Kerr*, 62 Pa. St. 353, and *Ryan* v. *The New York, etc., R. R. Co.*, 35 N. Y. 210. In both of these cases, it was held that a railroad company is not liable to the owner of a house consumed by fire, communicated from another house situated at some considerable distance from it, and which was set on fire by sparks emitted from the locomotive of the company. These cases are in conflict with the overwhelming weight of authority, and can not be deemed true interpretations of the law. Judge Cooley, in his work on Torts, cites a very great number of cases, in which the Pennsylvania and New York doctrine is disapproved. Among the citations of this distinguished author are decisions of the English courts, of the Supreme Court of the United States and of the courts of nearly all the States of the Union. Cooley Torts, 76, *n.* Of the cases cited, the Supreme Court of Illinois said: "These two cases stand alone, and we believe they are directly in conflict with every English or American case, as yet reported, involving this question." *Fent* v. *The Toledo, etc., R. W. Co.*, 59 Ill. 349.

There are cases in New York declaring and enforcing principles, with which the case cited by appellee can not be made to harmonize. One of these is the case of the apothecary, which we have already considered. Another is that of *Guille* v. *Swan*, 19 Johns. 381, where the doctrine, that one is liable for the remote consequences of his act, was extended much beyond what would be necessary to support the appellant's complaint. In that case it was held that one who ascended in a balloon, and came down upon the garden of another, was liable for the injury caused by a crowd of persons attracted to the garden by the descent of the balloon. Still another, and perhaps a more strikingly illustra-

tive case, is that of *Vandenburgh* v. *Truax*, 4 Denio, 464. In that case the defendant engaged in an altercation with a negro boy and menaced him with a weapon. The boy, pursued by the defendant, fled in fear from the defendant, and, in the course of his flight, ran into the store of his employer, and, striking against a faucet of a cask of wine, caused the wine to be spilled and lost, and it was held, in a vigorous and forcible opinion, delivered by BRONSON, C. J., that the defendant was liable to the owner of the wine.

In *Webb* v. *The Rome, etc., R. R. Co.*, 49 N. Y. 420, the plaintiff sued for injuries caused by fire communicated to a tie on the track of the railway company, by the latter's locomotives, and, by the burning tie, to the plaintiff's property, and it was held that the action would lie.

In the still later case of *Pollett* v. *Long*, 56 N. Y. 200, the defendant negligently constructed a dam across a stream, which gave way and carried out another negligently constructed dam, and thus caused injury to the plaintiff's property, and the defendant was held liable. The trial court instructed the jury that the injury was too remote, evidently acting upon *Ryan* v. *The New York, etc., R. R. Co.*, *supra*, but the instruction was held erroneous and the judgment reversed. The same court, in *Wasmer* v. *The Delaware, etc., R. R. Co.*, 80 N. Y. 212, held that a railway company was liable for any injury done by a runaway horse, the cause of the horse's fright being the negligent manner in which the company's servants ran a locomotive and train through the city of Utica. Counsel there argued: "The respondent should have been nonsuited, because she failed to show that the negligence of appellant was the sole and proximate cause of the death. The runaway horse and wagon was the proximate cause of the accident." The case of *Ryan* v. *The New York, etc., R. R. Co.*, *supra*, was cited by counsel, but the court passed it unnoticed. Without further citation of cases, we think it may be safely affirmed

that, upon the principle which governs the case before us, the court which decided *Ryan* v. *The New York, etc., R. R. Co.*, *supra*, is clearly in line with the view to which we are here disposed to give our adherence.

It is not necessary that the precise injury which actually occurred could have been reasonably anticipated at the time the original wrong was committed. It is true that the resultant injury must be of such a general character as might have been reasonably foreseen and provided against. The liability of horses to take fright at unusual noises or objects is a thing to be apprehended and guarded against. Says Dr. Wharton: "Certainly it will not be maintained that it is an unusual and unnatural thing for horses, when travelling on a road, to be frightened by extraordinary noises or sights. He, therefore, who, on a road travelled by horses, makes such noises or exhibits such spectacles, is liable for any damage caused by a horse taking fright. This rule has been applied to protect the public using a road from the effect of a jet of water likely to frighten horses coming along it, the jet of water being caused by the defendants, the New River Company, in the exercise of their statutory powers ; and to make a town liable for objects left on a road having a like tendency to frighten horses." Wharton Negligence, sec. 107. It is upon this ground that the cases proceed, which hold that a municipal corporation is liable for negligently permitting objects likely to frighten horses to remain upon, or in close proximity to, the public streets. Dillon Municipal Corporations, sec. 1007. The wrong-doer, who does an act likely to cause horses to take fright, must be deemed to be responsible for injuries caused by horses running away under the influence of the fright. This responsibility is not to be confined to the horses which suffer directly and immediately from the fright, but must be held to extend to such injuries as may be reasonably expected to be caused by them while running away. It is not unusual or unnatural, for horses

panic-stricken by fear, to run against and injure persons and property, and what is neither unnatural nor unusual the wrong-doer must be held to have anticipated. In illustration of the doctrine, that it is not necessary that the particular injury could have been foreseen, may be cited the case of *Hill* v. *Winson*, 118 Mass. 251. In that case the court, upon the trial, instructed the jury that "The accident must be caused by the negligent act of the defendants; but it is not necessary that the consequences of the negligent act of the defendants should be foreseen by the defendants. It is not necessary that either the plaintiff or the defendants should be able to foresee the consequences of the negligence of the defendants, in order to make the defendants liable. It may be a negligent act of mine in leaving something in the highway. It may cause a man to fall and break his leg or arm, and I may not be able to foresee one or the other. Still, it is negligence for me to put this obstruction in the highway, and that may be the natural and necessary cause." This instruction was held to be correct, the court saying: "It can not be said, as matter of law, that the jury might not properly find it obviously probable that injury in some form would be caused to those who were at work on the fender by the act of the defendants in running against it. This constitutes negligence, and it is not necessary that injury in the precise form in which it in fact resulted should have been foreseen. It is enough that now it appears to have been a natural and probable consequence.. *Lane* v. *Atlantic Works*, 111 Mass. 136, and cases cited." What is usual, the law requires the person doing a wrong to anticipate and provide against. A wrong-doer can not escape liability upon the ground that the injury resulting from the wrong was too remote, if it was in fact a usual or probable one. Proximate results are such as are natural or usual. It was said in *Henry* v. *The Southern Pacific R. R. Co.*, 50 Cal. 176, that "A long series of judicial decisions has defined proximate, or immediate and

direct damages to be the ordinary and natural results of the negligence ; such as are usual and as, therefore, might have been expected.'' Speaking of the quotation we have made from the case cited, Mr. Thompson says that the definition of the court is given with little variation in many cases, and, in support of this statement, a great number of cases are cited. 2 Thompson Negligence, 1083. In the case in hand the injury was a usual one, within the meaning of the law, for it was neither extraordinary nor unnatural. The probability that horses lawfully driven, upon a much-travelled public highway, will take fright at extraordinary noises, is one which he who causes such noises to be made must, in contemplation of law, foresee and provide against. Nor does this duty of forecasting stop at this precise point, for he must also foresee the ordinary behavior of horses fleeing under the influence of fear. To hold otherwise would be to enable the wrong-doer to protect himself from what might have been reasonably expected to result, by proof that he did not foresee what actually occurred. The law is not justly subject to the reproach of showing favor to any such doctrine. What was to have been expected in the ordinary course of things the wrong-doer did, in the eyes of the law, foresee and expect.

We are satisfied that, both upon principle and authority, it must be held that the injury for which the appellant sues is, as shown by the confessed averments of the complaint, the usual and proximate result of the wrongful act of the appellee.

The allegations of the complaint are unusually full and strong, and show not merely passive negligence, but wanton and wilful wrong. The use of the steam whistle by locomotives may be of such a character as to constitute an actionable injury. The rule upon this subject is thus stated by an American author : ''Where the whistle is negligently and wantonly sounded, so that horses lawfully in the vicinity

are caused to run off and injury is inflicted, it is correctly held that the company is liable.'' Wharton, sec. 836. *Voak* v. *Northern, etc., R. W. Co.*, 75 N.Y. 320. It is, as we under-stand appellee's argument, not denied that there are cases where the negligent and wanton sounding of steam whistles may constitute a cause of action; nor do we understand counsel as contending that the facts stated in the complaint are insufficient to bring this case within the rule. The con-tention is, not that the facts stated would not have consti-tuted a cause of action in favor of the person whose horse took fright and ran off, had injury resulted to him, but that the injury to the appellant is too remote even though the complaint shows an actionable wrong. The real question, therefore, which the course of argument adopted presents, is as to the remoteness of the injury. The question as to whether there was an original wrong is not, in fact, debated. Of course, there must have been an original wrongful act, and this presents incidentally only the question as to whether the sounding of steam whistles by locomotive engineers can be deemed to constitute actionable negligence. It is un-doubtedly true that the law is much more liberal in favor of railway companies operating locomotives than others, for there are cases in which others than those engaged in oper-ating railway engines would be liable, but in which no action could be maintained against the latter. But, while this is so, there are cases where the railway company may be liable for the improper and negligent sounding of the whistle. Of course the mere sounding of the whistle can not be deemed negligence, although blown in close proximity to the high-way, and even though there are horses in the immediate vicin-ity. There may, however, be attendant facts and circum-stances which show it to be culpable negligence. Wharton Negligence, sec. 898, and author's note; *Voak* v. *Northern, etc., R. W. Co., supra; The People* v. *New York, etc., R. R.*

*Co.*, 25 Barb. 199 ; *Culp* v. *Atchison, etc., R. R. Co.*, 17 Kan. 475.

There are, in this case, no facts or circumstances showing an excuse for sounding the whistle in the manner in which it was done ; on the contrary, it is fully and distinctly shown that the whistle was wantonly sounded at an improper place, in a wilfully and dangerously negligent manner, and without excuse or justification. If there were facts, we deem it proper to add, to prevent possible misunderstanding, showing a necessity for the use of the whistle, or even showing a reasonable excuse for using it at the place and in the manner in which it was used, then a rule different from that which we here apply would be applicable.

Judgment reversed.