The Louisville, New Albany and Chicago Railway Company v. Jones.

Judgment affirmed.

Filed Dec. 18, 1886.

---

No. 11,948.

## THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY *v.* JONES.

NEGLIGENCE.—*Complaint for Personal Injury.*—*General Averments of Negligence.*—A complaint to recover for personal injury is sufficient to withstand a demurrer, under the statutes of this State, when it characterizes the act which resulted in the injury as having been negligently or carelessly done, without alleging the specific facts constituting the negligence.

SAME.—*Railroad.*—*Derailment of Car.*—*Injury of Passenger.*—*Presumption of Negligence.*—*Rebutting Evidence.*—*Explanation as to How Accident Happened.* —Where a passenger is injured by reason of the car in which he is being carried becoming derailed, a presumption of negligence arises against the railroad company, which stands with the force of actual proof until overthrown by evidence that the accident was inevitable or unavoidable. The company is not required to explain how the accident happened. It is only necessary for it to show that it had employed the utmost skill and prudence practicable in its business, and that the cause of the accident could not reasonably have been discovered and guarded against.

SAME.— *Evidence.*— *Objection to Question.*— *Conversation with Engineer of Wrecked Train Remote from Scene of Accident.*—*Practice.*—Where the trial court does not know from a question of a general character, calling for a conversation with the engineer of the train, at a station seven miles distant from the scene of the accident, whether the answer of the witness will or will not be competent evidence, it is not error to overrule

The Louisville, New Albany and Chicago Railway Company *v.* Jones.

an objection to the question, based on the ground that the conversation "was irrelevant and immaterial and not connected with anything that occurred at the accident." If the answer is not competent, error may predicated upon a refusal to strike it out.

SAME.—*Speed of Train Prior to Accident.—Non-Expert Witness.*—Where negligence is charged in the running of a train at a high and dangerous rate of speed, it is competent for a non-expert witness, who saw the train one mile and a half from the place where the accident occurred, to state the rate of the speed at the point where his observation was made, at least in connection with the testimony of other witnesses that the speed had not been checked at the place where the accident occurred.

SAME.—*Pre-Existing Disease.—Damages for Aggravation.*—Where, by reason of the negligent acts of another, a person suffering from a pre-existing disease sustains an aggravation of his malady, he may recover to the extent of the injury thereby caused.

SAME.—*Rate of Speed.—Right of Railway Company to Regulate.*—In an action prosecuted by a passenger for an injury received by the derailment of a train running down grade, and around a curve, at a rapid rate of speed, an instruction asked that a railway company has the right to propel its trains at such a rate of speed as it sees fit, and that no rate of speed is negligence *per se*, should be refused.

EVIDENCE.—*Objections to Admission Must be Specific.—Supreme Court.—Practice.*—A general objection to the admission of evidence, stating no reason why it should be excluded, presents no question on appeal.

INSTRUCTIONS TO JURY.—*How Considered.—Inaccurate Statements.*—An instruction must be considered as a whole and in connection with the other instructions given, and if, when thus considered, the law is correctly stated, there is no available error in the fact that it contains some inaccurate statements.

SAME.—*Repetition of Proposition.*—When a rule of law applicable to the case is given in one instruction, it is not necessary to repeat it in another.

SUPREME COURT.—*Weight of Evidence.*—The Supreme Court will not reverse a judgment upon the weight of conflicting evidence.

From the Lawrence Circuit Court.

*G. W. Friedley, G. W. Easley* and *W. H. Russell,* for appellant.

*M. S. Mavity, W. J. Throop, M. F. Dunn, R. Hill* and *R. N. Lamb,* for appellee.

ZOLLARS, J.—It is alleged in appellee's complaint, that in June, 1882, appellant was the owner of a railroad, and en-

gaged as a common carrier, in transporting passengers over the same for hire; that in that month she purchased a ticket from its agent at Orleans, in this State, by virtue of which, the consideration paid therefor, and the contract and agreement made by appellant, she became entitled to be safely and securely carried from Orleans to Greencastle Junction; and that possessing the ticket so purchased, and in pursuance of the agreement of appellant, she went upon one of its regular passenger trains at Orleans, and into a passenger coach forming a part of that train, to be carried from that station to Greencastle Junction.

That portion of the complaint which alleges appellee's injuries, and charges appellant with negligence, is as follows:

"And the said defendant ran its said train carelessly and negligently, at a high, unusual, and dangerous rate of speed, to wit, at the rate of fifty miles an hour. That said rate was not only dangerous on said road, to the life and limbs of all the passengers on said train, but that said train was thus carelessly, negligently and rapidly run on a down grade, without applying the brakes as should have been done, and over a defective and insufficient track, and over defective and insufficient rails, and over rails not properly spiked to the cross-ties, and over decayed, rotten and defective cross-ties, and over curves not properly elevated. And said defendant carelessly and negligently ran said train at said high and dangerous rate of speed, by pulling the same with a defective and insufficient locomotive, and with a locomotive that was not suitable for, and sufficient to draw a passenger train, at such high rate of speed, by reason of all of which acts of carelessness and negligence on the part of said defendant, so done and committed, and without any fault or negligence on the part of this plaintiff, said cars were, at and in the said county of Lawrence, and State of Indiana, by said defendant, its agents and employees, so carelessly and negligently run and managed as to throw said train and the locomotive thereto attached from said road, down a high embankment,

among the trees and bushes, and against the ground, suddenly, while running at the high rate of speed aforesaid, and turned the car in which plaintiff was over on its side. And the plaintiff avers that by reason of said sudden and immediate derailment, and by the turning of said car on its side, and without any fault or negligence on her part, and while she was in her seat in the said coach, where she had a right to be, she was suddenly carried over said embankment, with said coach and train, thirty or thirty-five feet, among said trees and bushes, and against the ground aforesaid; that by reason of said great speed, and the derailment and turning over of said coach, the plaintiff was hurled forward against the seat, and upon the cornice and braces of the top part of the said coach, and struck her head against said cornice and braces with great force, which shocked her, and rendered her insensible, and injured her head and eye; that by reason of the aforesaid high rate of speed, and by the overturning of the said coach, other passengers therein were thrown violently upon this plaintiff, without any fault or negligence of hers, and she was greatly injured by said passengers being thrown upon her, and by being thrown upon and against said cornice and braces aforesaid, and by all of which her right arm was strained and injured, her hips and spine injured, whereby she was partially paralyzed, and her body otherwise cut, bruised and wounded, from all of which she has ever since suffered, and does still suffer, great bodily pain and mental anguish, and that she is, in consequence of said injuries so received, permanently disabled and rendered unable to attend to her household duties, and rendered unfit for any kind of business pursuit, or the comfortable enjoyment of life or limb; that in addition to her great suffering and disabilities, she has been put to great expense for surgical and medical attendance, nursing and medicine, in and about the attempted healing of said injuries, and became liable for the necessary fees therefor. And the plaintiff says that in consequence of said careless and negligent acts of the said

defendant, its agents and employees, and without any fault or negligence on her part, she has been permanently injured in body and mind, her constitution weakened, her eyesight impaired, her health impaired, and her happiness destroyed. Wherefore she demands judgment for ten thousand ($10,000) dollars."

Appellant's demurrer to the complaint was overruled. That ruling is one of the alleged errors upon which its counsel rely for a reversal of the judgment against it, in favor of appellee.

The main and general objections urged to the complaint by appellant's counsel are, that there is no averment that appellant, or its servants, were guilty of any careless act or omission in the actual running of the train ; that there is no averment that the train left the track because of the curve, the insufficiency and imperfection of the locomotive, the rails, ties or track, nor that such insufficiency caused the injury, or contributed thereto.

In our own judgment, these objections, and others urged by counsel, have not such a basis upon which to rest, as requires a holding that the demurrer to the complaint should have been sustained.

The statute provides, that the facts constituting the cause of action shall be stated in the complaint in such a manner as to enable a person of common understanding to know what is intended. R. S. 1881, section 338. And that in the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties. R. S. 1881, section 376 ; *Dickensheets* v. *Kaufman*, 28 Ind. 251.

It is well settled, too, that a pleading must be taken as a whole, and construed according to its general scope and tenor. *Fleetwood* v. *Dorsey Machine Co.*, 95 Ind. 491 (493), and cases there cited ; *Starret* v. *Burkhalter*, 86 Ind. 439 (444).

Taking the complaint as a whole, the charges of negligence therein may be summarized as follows :

Appellant, by its agents and servants, carelessly and negli-

gently used a defective locomotive, not suitable or sufficient to draw a passenger train at a high rate of speed ; and using that locomotive, it carelessly and negligently ran the train at the dangerous rate of fifty miles per hour, and was guilty of carelessness and negligence in running the train at that rate, with the defective locomotive, upon a down grade, without applying brakes, and around a curve not properly elevated, and over defective and insufficient rails not properly spiked to the cross-ties, over decayed, rotten, and defective cross-ties, and over a defective and insufficient road-bed, by reason of all of which acts of carelessness and negligence on the part of said defendant, so done and committed, and without any fault * * on the part of plaintiff, the train was thrown from the track, and she was injured. The complaint closed with the averments that in consequence of said careless and negligent acts of appellant, its agents and employees, the plaintiff, without her fault, was injured, etc.

The complaint is not as specific and methodical as it ought to be, but we think it sufficient to withstand the demurrer directed against it, especially when we apply to it the rules of construction prescribed by the statute, and established by our decisions.

It is alleged specifically, that the train was run over decayed and rotten ties, but the specific facts showing the insufficiency of the locomotive, in what regard the curve was not properly elevated, in what respect the rails were defective and not properly spiked to the ties, and in what respect the road-bed was otherwise out of repair, are not stated.

The general allegations as to these matters might have been reached by a motion to have the complaint made more specific, but the complaint is not necessarily bad, as against a demurrer, because the allegations are thus general. *Cincinnati, etc., R. R. Co.* v. *Chester*, 57 Ind. 297 ; *Jones* v. *White*, 90 Ind. 255 ; *Cleveland, etc., R. W. Co.* v. *Wynant*, 100 Ind. 160 ; *Louisville, etc., R. W. Co.* v. *Krinning*, 87 Ind. 351 (352) ; *Boyce* v. *Fitzpatrick*, 80 Ind. 526.

Whatever might be said of it, as an original proposition, under our later statutes, it is settled as a rule of pleading and practice in this State, in cases such as this, that it is sufficient to withstand a demurrer for want of facts, to characterize an act as having been negligently or carelessly done, and that under such an allegation, the facts constituting the negligence may be given in evidence. *Cleveland, etc., R. W. Co.* v. *Wynant, supra; Jones* v. *White, supra; Louisville, etc., R. W. Co.* v. *Krinning, supra; Boyce* v. *Fitzpatrick, supra; Cincinnati, etc., R. W. Co.* v. *Gaines,* 104 Ind. 526 (54 Am. R. 334); *Wabash, etc., R. W. Co.* v. *Johnson,* 96 Ind. 44.

As we have said, the complaint is not as specific and methodical as the rules of good pleading require, but looking to all the averments therein, and giving to them a fair construction, it may reasonably be said that negligence is charged with respect to the running of the train, the condition of the curve, ties, rails, etc.

To sustain the charge of negligence made in the complaint, it was competent for appellee to prove, if she could, that the curve was not properly constructed, that the rails were defective and not properly spiked to the cross-ties, and that the cross-ties were defective and rotten. The condition of the cross-ties, etc., as well as the speed of the train, are important elements in the negligence charged. *Pittsburgh, etc., R. W. Co.* v. *Jones,* 86 Ind. 496 (44 Am. R. 334); *Brinkman* v. *Bender,* 92 Ind. 234; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151 (155); *Louisville, etc., R. W. Co.* v. *Hanmann,* 87 Ind. 422.

When appellant admits by its demurrer all that is charged in the complaint, it admits too much, to be heard to say that it is not charged with actionable negligence.

The demurrer to the complaint was properly overruled.

It is contended by counsel for appellant, that the evidence does not show negligence on the part of appellant, and that, hence, the judgment should be reversed.

As the train upon which appellee was a passenger was

passing around a curve upon a down grade, the spikes which held the outside rail to the ties gave way, the rail turned over, and the train left the track and went down an embankment, and appellee was injured.

She was without any fault that contributed to the injury which she received by the derailment of the train. These are facts which are established, and about which there is no conflict in the evidence.

Upon the authority of the case of *Cleveland, etc., R. R. Co.* v. *Newell,* 104 Ind. 264 (54 Am. R. 312), and the numerous cases there cited, it may be said here, as was, in substance, said there, that when the plaintiff made it to appear that she was a passenger upon appellant's train, and while being carried as such, the car in which she was seated left the track and she suffered injuries thereby, she had shown a state of things upon which a presumption of negligence arose against the railroad company, which stood with the force and efficiency of actual proof of the fact, and was available for her benefit until negatived and overthrown, and that such presumption can only be overthrown by proof that the casualty "resulted from inevitable or unavoidable accident, against which no human skill, prudence or foresight, as usually and practically applied to careful railroad management, could provide." In addition to the large number of cases there cited, we cite the following, decided by this court: *Jeffersonville R. R. Co.* v. *Hendricks,* 26 Ind. 228; *Sherlock* v. *Alling,* 44 Ind. 184; *Yerkes* v. *Sabin,* 97 Ind. 141 (145) (49 Am. R. 434).

Upon the evidence before us, we can not say that appellant met and overthrew the presumption which thus arose against it. Indeed, upon the record before us, this court can not say that the jury were not justified in regarding the other evidence as sustaining the presumption of negligence which arose upon the undisputed facts, rather than as meeting and overthrowing that presumption.

It is admitted by counsel for appellant, that the evidence, as a whole, shows that the train was running around the

curve at the rate of between forty and forty-five miles per hour. Some of the witnesses testified that it was running at the rate of fifty-five miles per hour.

As to the condition of the ties, rails, curve and road, there is a conflict in the evidence. There is evidence that some of the ties, at the point where the wreck occurred, and under the displaced rail, were decayed and unsound; that the rails were old and somewhat worn; that the road-bed was not in a good condition, and that the outside rail, around the curve, was not sufficiently elevated to withstand the momentum of a rapidly moving train.

It was for the jury to determine as to what witnesses they would give the greater credence, and to settle the conflict in the testimony. What they have done in that regard, as settled by a long line of decisions, this court can not undo.

The verdict of the jury implies a finding that the rails were old and worn; that some of the ties were decayed and unsound; that the curve did not have a proper elevation, and that the train was running at the rate of fifty-five miles per hour, and that to run the train at the speed it was run around the curve and over the road in its then condition, was negligence.

Upon the record before us, this court can not disturb that determination.

The judgment in appellee's favor is $4,000. If her present condition is attributable to the injuries received in the wreck of the train, the damages, clearly, are not excessive.

Appellant's counsel contend, however, that under the evidence, the damages are excessive, and base that contention upon the further contention that appellee's disabled and diseased condition is not the result of, and was not solely and proximately caused by, appellant's negligence.

In other words, they contend that at the time of and before the injuries received by the derailment of the train, appellee was, and had been, suffering from ovarian troubles, and

that to that cause, and not to the injuries received through appellant's negligence, her present condition is attributable.

The testimony of the physician who had been her physician for some years before the casualty, and who attended her for some time thereafter, and that of other physicians who had made an examination of her person with a view of testifying upon the trial, go very far towards sustaining the contention of appellant's counsel.

But upon this question, again, there is a conflict in the evidence. There is evidence tending to show, that although since the accident, she has been, in a measure, a physical wreck, prior thereto she was a healthy and vigorous woman, and that her present condition is attributable alone to the injuries received through and by the wreck of appellant's train, upon which she was a passenger.

In all cases, where injuries have resulted to one from the wrongful or negligent acts of another, the courts should see to it that the party thus in fault shall respond in such an amount as will, as far as possible, compensate the injured party for all such injuries as may be properly attributed to such wrongful or negligent acts. And as clearly, courts and jurors should see to it that parties accused, and guilty, of negligence, shall not be compelled to respond in damages for injuries which are not properly attributable to such negligence.

Doubtless, cases occur where parties are not awarded such damages as they ought to have for the injuries received. And doubtless, too, there are cases where the damages awarded are largely excessive, and are awarded for sufferings and broken health which are the result of other causes, and not at all, in any proper and legal sense, the result of the negligence of the party against whom they are awarded.

As corporations often attempt to avoid liability, when in good conscience they ought to respond promptly, so there are often dishonest and unconscionable claimants who, having received some injury upon a wrecked train, or otherwise, feign

injuries which they have not received, and seek a recovery against the corporation for these, and for broken health, which they know are the result of their own indiscretions, or other antecedent causes, and in no way attributable to the fault of the corporation.

And as there may be a refusal of compensation because of an honest belief on the part of the managers of the corporation, that there has been no fault for which it should respond in damages, so there may be, and doubtless are, many cases where persons having received some injury, and being fearful of consequences to follow, note with alarm the slightest symptoms, forget their real condition prior to the injury, and ignorantly and honestly attribute to that injury the recurring pains and failing health, which are the results wholly of antecedent causes, and in no way connected with the injury complained of, or chargeable to the negligence of the corporation.

These considerations require that juries shall exercise the greatest vigilance, and the broadest judgment, and move upon the elevated plain of justice, leaving at their feet, and out of sight, considerations for the wealthy and strong, on the one hand, and sympathy and prejudice on the other. They require the same on the part of the trial judge, and that, with his superior learning in the law, he shall have the courage to correct any errors into which the jury may fall, by setting aside their verdict, if necessary.

As has often been declared by this court, the jury and trial judge have the witnesses before them, and thus have a means of arriving at the truth, which an appellate court can not have. Until the contrary is affirmatively shown by the record, the appellate court must assume that the jury and court below exercised the utmost good faith, and brought to bear upon the issues involved their unbiased and best judgment.

Because of the conflict in the evidence, as to the cause of appellee's present condition, this court can not reverse the judgment upon the weight of the evidence upon that question.

The next point discussed by appellant's counsel, is the alleged improper admission of certain testimony by the witness Palmer, as to statements made to him by the roadmaster, Rogers. Their argument is met by counsel for appellee with the contention that no grounds of objection to the testimony were stated to the court below, and that, hence, no question as to its admissibility is before the court for decision. That contention can not be avoided. The objection to the testimony, and the exception to the action of the court in admitting it, as stated in the record, were as follows:

"Objected to by the defendant, objection overruled, and exceptions taken at the time of objection."

The objection thus made, as many times decided by this court, was too general to present any question. *City of Delphi* v. *Lowery*, 74 Ind. 520; *Lake Erie, etc., R. W. Co.* v. *Parker*, 94 Ind. 91; *Grubbs* v. *Morris*, 103 Ind. 166; *Shafer* v. *Ferguson*, 103 Ind. 90; *Indiana, etc., R. W. Co.* v. *Cook*, 102 Ind. 133; *McClellan* v. *Bond*, 92 Ind. 424; *Byard* v. *Harkrider*, *ante*, p. 376; *Louisville, etc., R. W. Co.* v. *Falvey*, 104 Ind. 409.

Upon the trial below, after the witness Shanks had stated that he knew, and had a conversation at Mitchell with, John Carmony, the engineer in charge of the engine of the train upon which appellee was a passenger, and which was derailed near White river bridge on the same day, about seven miles from Mitchell, he was asked to "state what Carmony said in that conversation." The objection made to this question was as follows: "To which question the defendant by counsel objected, for the reason that such conversation was irrelevant and immaterial, was in no way connected with anything that occurred at the accident where plaintiff is alleged to have been afterwards injured near White river bridge." Over this objection and appellant's exception, the witness answered as follows:

"John Carmony told me that he would make the time if the wheels remained under him, or run her in the ditch."

Here, again, appellee's contention can not be disregarded, that there is no available objection to the question, unless it be that the conversation was in no way connected with anything that occurred at the accident. In our judgment, no available question was saved by the objection, made in the manner and at the time it was made.

At the time the question was asked, it was not known to the court what the conversation between the witness and the engineer was, or what it was about. Until in some way enlightened, the court had no way of determining whether the "conversation was in no way connected with anything that occurred at the accident." Appellant's counsel so stated in their objection to the question, but that statement was simply their conclusion, put forward in the way of an objection to the question, and was not a statement of what the conversation was, or what it was about.

The court was thus in advance asked to rule out, as incompetent, testimony which as yet it did not know to be incompetent. And this court is now asked to overthrow a judgment, and hold that the court below committed an error in overruling the objection to the question, made at a time when it did not know to what subject the statements of the engineer might relate. Whether the answer by the witness is competent, is one thing; whether the question as propounded was competent, and whether or not the court shall be held to have erred in overruling the objection to the question at the time it did, and without knowledge of the subject to which the conversation related, are very different things. For aught that the court knew, the answer by the witness to the question might have been, that the engineer had stated that his engine and the cars were all new, and of a superior quality, and that his train was on time. An incompetent answer does not relate back, and render a question incompetent, which is otherwise competent. The question, it will be observed, is a general one, asking for what the engineer said in a conversation, and does not ask for what he said

upon or in relation to any particular subject. If then, in that conversation, it was possible for the engineer to have said anything that would be competent and relevant to the questions at issue in this case, and that would have bound the company which he represented, it can not be said that the question was incompetent, and that the court erred in over-ruling the objection thereto. We think that it was possible for the engineer to have said something at Mitchell, although seven miles distant from the scene of the disaster, that would have bound the railroad company, and that would have been competent and relevant in this case.

It is charged in the complaint, as we have seen, that the railroad company was guilty of negligence in using a defective and insufficient locomotive, and that, using that locomotive, the train was negligently run at the dangerous rate of fifty miles an hour, upon a down grade, and around a curve, etc.

Suppose the engineer had said to the witness, that his engine was old, defective, and insufficient; that the flanges on the wheels were too small in the beginning, and had become smaller by wear and breakage, and that by reason of such defects, the engine had, prior thereto, left the track; can it be doubted that such declarations would have been competent evidence in this case?

Knowledge of such facts by the engineer in charge of the engine, would clearly have been knowledge to the railroad company, whose servant and agent he was, and evidence of such knowledge would have been the most potent evidence in support of the negligence charged in the complaint.

The court, of course, might have required appellee's counsel to state what was expected to be proved by the answer of the witness to the question, but it was not bound to do so. We think, too, that appellant might have required the question to be made more specific, so as to show to what subject the statement by the engineer related. No such request was made, nor was there any objection to the question because of its being so general; and, clearly, the question being compe-

tent in the absence of such objection, appellant might have moved to strike out the answer, and saved the point as to its competency, by excepting to the ruling of the court if adverse to it.

Having neglected to pursue either of these methods, it ought not to be heard now to insist upon a reversal of the judgment because of the court's ruling upon the objection, made in the manner and at the time it was made. *Wolfe* v. *Pugh*, 101 Ind. 293 (306).

The question here is, did the court, in overruling the objection to the question, under the circumstances, commit an error?

We think not. When we have decided this, we have decided all that the record requires, and hence do not enter upon the question as to the competency of the answer by the witness.

Further contentions by appellant's counsel are, that the court below erred in allowing appellee's witness Sheeks, who saw the train about a mile and a half south of where the accident occurred, to testify that at the point where he observed it, "the train was running at a rapid rate of speed, faster than usual," and in overruling an objection to the following question, put by appellee's counsel to her witness Wilkinson, viz.: "What was the speed of that train, going north on the 13th day of June, 1882, as compared with the usual speed of trains going in the same direction at that point?"

To this question the witness answered: "The train, when it passed my house, was running very fast, and faster than trains of defendant had usually run at that point."

The only specific objection made to the questions put to these witnesses, and hence the only objection that can be noticed, was, that the evidence thus sought would not tend to show the speed of the train, at or near the place where the accident took place, and that it had not been shown that the witnesses were competent to form an opinion.

As will be observed, the objection does not raise the question as to whether or not a witness may give the result of his comparison of the speed of one train, with the speed of another, and, hence, that question is not before us for decision. The only question raised by the objection is this: In this case, where negligence is charged in the running of the train at a high and dangerous rate of speed, may witnesses, who saw the train at a point one and a half miles from the place where the accident occurred, state the rate of speed at the point where they thus observed the train?

In point of time, at least, the train, running at a high rate of speed, would not be far from the place of the accident, when a mile and a half away.

Whatever might be said of the evidence, if it stood alone, and unconnected with other evidence, we think it was competent in connection with the testimony of the witness, Matthews. He showed himself to be competent to give an opinion as to the speed of trains when upon them, and testified that he was on the train in question, had his attention directed to its speed by other passengers talking about it just before the accident; that it was running at the rate of fifty-five miles an hour, and that the speed had not been checked after leaving Mitchell.

If, as this witness stated, the speed had not been checked, it was not improper to show that it was running at a rapid rate of speed when but a mile and a half from the place of the accident. As to the competency of the witnesses, it is sufficient to say that they were certainly competent to know and state whether the train was moving rapidly or slowly.

It has been held, that no question of science is involved, and that a person need not be an expert to give his opinion as to the speed of a moving train.

The testimony of one not an expert may not be of so much weight, but it is nevertheles competent. *Detroit, etc., R. R. Co.* v. *Van Steinburg,* 17 Mich. 99.

It is argued in behalf of appellant, that by the first in-

## NOVEMBER TERM, 1886. 567

The Louisville, New Albany and Chicago Railway Company v. Jones.

struction, the court submitted the case to the jury upon a false theory. In that instruction, the court embodied, substantially, the averments in the complaint. The instruction is no broader than the complaint, and in no way, that we can conceive of, could it have misled the jury.

It is earnestly insisted that the fourth charge given by the court was erroneous, in that the jury were therein instructed, that in order to meet the presumption of negligence, which arose out of the fact of the wrecking of the train, it was incumbent upon appellant to explain the cause of the accident. So much of that instruction as needs to be set out is as follows:

"The plaintiff must allege that the accident was caused by the negligence or carelessness of some agent or employee of the defendant, and the plaintiff must establish this averment, but when the plaintiff proves that the train was precipitated down an embankment, and the plaintiff, without fault on her part, thereby received injuries, the presumption arises that the accident was the result of some act or omission of the defendant's agents, servants and employees, and it devolves upon the defendant to explain how such accident happened. And if, after the jury has heard all the evidence, it finds that the accident occurred without any fault, carelessness or negligence of the defendant, its agents, employees or servants, but that the same occurred by reason of some act, or the conduct of some one for whose act or conduct the defendant is not responsible, and which the defendant could not guard against by reasonable diligence, then the defendant would not be liable."

The instruction must be considered as a whole, and in connection with the other instructions in the case. If taken as a whole, and in connection with the other instructions given, the law of the case is correctly stated, there can be no available error in the fact that there may be some inaccurate statements in the instructions above set out. *McDermott* v. *State*, 89 Ind. 187; *Nicoles* v. *Calvert*, 96 Ind. 316; *Wright* v.

*Fansler*, 90 Ind. 492; *Story* v. *State*, 99 Ind. 413; *Barnett* v. *State*, 100 Ind. 171; *Koerner* v. *State*, 98 Ind. 7; *Elkhart Mut. Aid, etc., Ass'n* v. *Houghton*, 103 Ind. 286 (290); *Stockwell* v. *Brant*, 97 Ind. 474; *Louisville, etc., R. R. Co.* v. *Kelly*, 92 Ind. 371; *Young* v. *Clegg*, 93 Ind. 371; *Louisville, etc., R. W. Co.* v. *White*, 94 Ind. 257; *Louisville, etc., R. W. Co.* v. *Grantham*, 104 Ind. 353; *Conrad* v. *Kinzie*, 105 Ind. 281.

There is a statement in the instruction, that to meet the presumption of negligence on its part, it devolved upon appellant to explain how the accident happened. If standing alone, as in the case of *Tuttle* v. *Chicago, etc., R. R. Co.*, 48 Iowa, 236, cited by counsel, that statement would be erroneous.

Doubtless, there have been, and will hereafter be accidents, the causes of which can never be known.

What is required, and all that is required, of a railroad company in a case like this, to overthrow the presumption of negligence on its part, when such a presumption arises, and to exonerate itself from liability, is to show, as stated in the case of *Cleveland, etc., R. R. Co.* v. *Newell, supra*, "that in the conduct of its business it had employed the utmost skill, prudence and circumspection practically and usually applied to railroad carrying, and that, notwithstanding all that, the cause of the accident was not and could not reasonably have been discovered and guarded against."

The statement in the instruction complained of must, as we have seen, be taken in connection with what precedes and follows it.

In the former part of the charge, not here set out, the court instructed the jury, that if certain facts were found, a presumption of negligence would arise, and that it would then devolve upon appellant to show that the accident happened without any fault or negligence on its part. Thus, the jury were instructed, that an absence of negligence on the part of appellant would be a sufficient defence; and so, immediately following the statement complained of, the jury are

again instructed that appellant would not be liable, if the accident should be found to have occurred without fault or negligence on its part.

By the second charge, the jury were instructed that appellant would be liable, if the accident happened by reason of its negligence.

By the third instruction, the jury were told that they would be required to determine whether the accident occurred through the " negligence and carelessness of the defendant, its agents, servants and employees."

The sixth instruction was upon the same subject, and was as follows:

" It is for you to determine from the evidence, whether the accident occurred through the fault of the defendant, or that it would have been avoided by proper and reasonable care and diligence of defendant's agents and employees."

By those instructions, taken together, the case was submitted to the jury, upon the theory that appellant was not liable unless guilty of negligence; so, doubtless, the jury understood the instructions. It is hardly possible that they could have understood from them that appellant was to be held liable unless it furnished an explanation of how the accident occurred.

What has been said of the fourth may be applied, to a large extent, to the fifth instruction. Taken as a whole, and in connection with the other instructions, the jury were thereby instructed that appellant was liable, if it was negligent with respect to the condition of the ties, etc., or the running of the train. That, we think, brought the case within the complaint, and, hence, was not erroneous.

After stating the elements of damages to be considered by the jury, including permanent disablement, if that should be found, the court added this, in the seventh instruction: " To which you may add such an amount, as you may, in the exercise of a sound discretion, think will be a just compensation for her anxiety and distress of mind," etc.

The only objection urged to that instruction is, that the jury were thereby authorized to fix the amount of damages for appellee's anxiety and distress of mind, without regard to the evidence.

The eleventh instruction fully meets that objection. In that instruction, the jury were not only directed to determine the case by the law and the evidence, but were cautioned in strong terms against being influenced, in the least, by sympathy, favoritism or prejudice.

It is unnecessary, as it is impracticable, to embody all the law of the case in one instruction, and when a rule of law applicable to the case is given in one instruction, it is not necessary to repeat it in another. Louisville, etc., R. W. Co. v. Falvey, 104 Ind. 409 (426); City of Indianapolis v. Scott, 72 Ind. 196.

The ninth instruction, of which counsel for appellant especially complain, is as follows:

"9. If you find from the evidence, that the plaintiff was diseased at and before the accident, and that her present condition is attributable to such former diseased condition, and not in any manner or part attributable to the injuries received in the railroad accident, and that plaintiff in fact received no injuries from said accident, then you would have to find for the defendant. If you find that plaintiff was diseased at and before the accident, but that by the accident her disease has been aggravated or intensified, then you will give her damages for just such injuries as she has sustained, which are the result of the accident. If you find from the evidence, that plaintiff, prior to the accident, was sound and free from disease, and that by reason of the injury received in the accident, she has become crippled, diseased, disabled and permanently injured, then you will assess such a sum as will compensate her fairly for the injuries thus sustained."

The first objection urged to this instruction is, that it assumes that appellee was injured. In answer to that, it is sufficient to say, that other instructions left it to the jury to

determine as to whether or not appellee had been injured, and that the evidence, without any conflict, shows that she was injured. See *Koerner* v. *State*, 98 Ind. 7 (13).

The only other objection that challenges attention, is limited to that portion of the instructions with reference to the aggravation of an existing disease.

It is most earnestly contended by appellant's counsel, in a lengthy argument, which shows thought and research, that appellant can not be held liable for the aggravation of an existing disease, although that aggravation was the result of its negligence, and the injury appellee thereby received. In other words, their position is, that if at the time of the injury appellee was in any way suffering from, and was to any extent disabled by, an existing disease, and her sufferings were intensified, and her disablement increased, by the injury, she can not recover for such additional suffering and increased disablement, because the injury was not the proximate and sole cause thereof. The argument is based upon the familiar maxim, *Causa proxima, non remota, spectatur.*

We do not think it would be profitable, in this case, to extend the opinion in a review of the numerous cases cited by counsel, and in an examination of the arguments advanced, as the question here involved has been examined at length, and decided by this court in recent cases, one of which has been decided since the filing of appellant's brief. Under those decisions, the law is correctly stated in the instructions under consideration. *Terre Haute, etc., R. R. Co.* v. *Buck*, 96 Ind. 346 (49 Am. R. 168), and the numerous cases there cited; *Louisville, etc., R. W. Co.* v. *Falvey, supra,* and the cases there cited.

By an instruction asked by appellant, the court was requested to charge the jury, that a railway company has the right to propel its train over its road at such rate of speed as it sees fit; that no rate of speed is negligence *per se*, or of itself, and that if, in this case, the jury should find that, at the place where the accident occurred, the railroad track was

in good repair, the ties sound, the rails of suitable character, and in safe condition, properly spiked and fastened to the ties with proper elevation, the running of the train at a high rate of speed would not be an act of negligence, and the verdict should be for appellant. As applied to this case, that instruction, as asked, does not state the law correctly.

Whatever may be said in other cases, it surely can not be, that as between the railroad company and the passengers upon its trains, whose lives are in its keeping, it may run the trains at any rate of speed it may see fit, upon a down grade, and around a curve. The rate of speed might be such as to make derailment of the train, under such circumstances, almost certain. However that may be, in this case, it was for the jury to say whether or not, under all the circumstances, the appellant was guilty of negligence in running the train at the rate of speed it was run.

The cases of *Terre Haute, etc., R. R. Co.* v. *Clark*, 73 Ind. 168, and *Cleveland, etc., R. W. Co.* v. *Newell*, 75 Ind. 542, cited by appellant's counsel, lend no support whatever to the instruction. The reasoning there condemns it. Neither do the other cases cited support the instruction. With the exception of the case of *Indianapolis, etc., R. W. Co.* v. *Hall*, 106 Ill. 371, in which a contrary doctrine was held, none of them were cases between the corporation and a passenger. In that case, the locomotive and cars were in good condition, and the track was straight and in good repair.

In the court below, the jury were instructed that if the train was run at such a rate of speed as to become a negligent management, and the injury resulted in consequence, the verdict should be for the plaintiff.

The Supreme Court held that the instruction was a proper one, and said: "So long as the increased speed of trains adds nothing to the dangers and risks of the travelling public, courts have no right to interpose. Subject to this limitation, railway companies have the unquestioned right to fix the rate of speed as they think best."

After a patient and careful examination of the alleged errors discussed by counsel, we find nothing in the record that requires, or that would justify this court in reversing the judgment.

Judgment affirmed, with costs.

Filed Dec. 14, 1886; petition for a rehearing overruled Feb. 24, 1887.