**B. Ann SKAGGS, Plaintiff-Appellant,**

v.

**Samuel P. DAVIS, Defendant-Appellee.**

No. 1–980A228.

Court of Appeals of Indiana,
Fourth District.

July 30, 1981.

Rehearing Denied Aug. 28, 1981.

G. Terrence Coriden, Lawson, Pushor, Mote & Coriden, Columbus, for plaintiff-appellant.

Robert L. Dalmbert, Dalmbert & Marshall, Columbus, for defendant-appellee.

CHIPMAN, Judge.

B. Ann Skaggs and Samuel P. Davis were involved in an automobile collision and she sued him for personal injuries allegedly suffered in the collision. The jury returned a verdict against her and she appeals raising the following issues:

I. Whether she should be granted a judgment on the evidence, or in the alternative, a new trial;

II. Whether counsel for Davis committed reversible error by violating the court's motion in limine order;

III. Whether the court improperly instructed the jury on assessing damages if they stemmed from a pre-existing injury or disease;

IV. Whether the court improperly allowed a photograph of Mrs. Skaggs' car to be introduced into evidence;

V. Whether the court erred in refusing to give a collateral source of income instruction;

VI. Whether the court improperly refused her instruction concerning a physician's competency to testify as to the genuineness of a patient's pain; and

VII. Whether the court improperly allowed Dr. Rapp to testify concerning the development of Mrs. Skaggs' disease.

We affirm.

## FACTS

This accident occurred on December 18, 1976, at an intersection in Columbus, Indiana. Mrs. Skaggs was heading east on the preferred street and Mr. Davis was heading south on the non-preferred street. He testified he stopped at the stop sign, and not seeing any traffic he began to proceed into the intersection until he noticed Mrs. Skaggs' car approaching. He then stopped to wait for her to pass and as she did he heard her car scraping his car, more particularly the left rear of her car scraped the right front of his car. He also heard her fender skirt hit the ground but testified he felt no impact. He admitted his negligence proximately caused the collision but denied the collision proximately caused Mrs. Skaggs' injuries.

Mrs. Skaggs' account of the accident was similar to Mr. Davis' except she testified he struck her car with enough force to leave her car sitting in the street at a 45 degree angle immediately after the accident.

At the time of the accident Mrs. Skaggs did not complain about any injuries but allegedly began experiencing headaches later that day. She also later began to experience neck and shoulder pains. In February of 1977 she began wearing a neck brace prescribed by her doctor. She eventually had two cervical spinal fusion operations, the latter of the two occurring in June of 1978. As a result of these operations she incurred medical bills in excess of $12,000 and was unable to work for a period of time.

Mrs. Skaggs suffered from a spondylitic degeneration of the spine and the central issue in the case was whether the collision aggravated the spondylitic condition which eventually required the surgery.

Three doctors, including the surgeon who performed the fusions, testified, *based on Mrs. Skaggs' description of the accident,* the accident either could have or did aggravate her condition which necessitated surgery.

## I. JUDGMENT ON THE EVIDENCE

Mrs. Skaggs argues the jury must have totally disregarded all of the medical testimony concerning her injuries in arriving at its verdict. In appealing this case Mrs. Skaggs is appealing a negative judgment. In her motion to correct errors she contends "the verdict of the jury was contrary to all of the evidence and as such, should be set aside." A party appealing a negative judgment presents nothing for review by the allegation the judgment entered against it is contrary to the evidence. *Link v. Sun Oil Company,* (1974) 160 Ind. App. 310, 312 N.E.2d 126. Additionally,

"[a] finding, which is in effect a negative finding against the plaintiff, may be set aside only if the evidence is uncontradicted and will support no reasonable inference in favor of the finding." *Taxpayers Lobby of Indiana, Inc. v. Orr*, (1974) 262 Ind. 92, 311 N.E.2d 814, 819. In this case the evidence concerning the *severity of the impact* of the collision was not uncontradicted and Mr. Davis' testimony supports a reasonable inference in favor of the finding. Mrs. Skaggs is not entitled to either a judgment on the evidence or a new trial.

## II. MOTION IN LIMINE

Prior to the beginning of the trial of this case the judge granted Mrs. Skaggs' motion in limine. That order reads as follows:

"IT IS, THEREFORE, ORDERED by the Court that . . . Defendant, his counsel and witnesses are ordered not to mention, refer to, interrogate concerning or attempt to convey to the jury in any manner, directly or indirectly, that plaintiff B. Ann Skaggs has or may have pending claims or litigations which do not relate in any way to this cause of action, and disability benefits or medical benefits that the plaintiff has through her place of employment or has paid personally without first obtaining permission of the Court outside the presence and hearing of the jury."

At trial counsel for Mr. Davis conducted the following cross-examination of Mrs. Skaggs:

"Q Mrs. Skaggs, do you know what all those medical bills total?

A I would say someplace between Thirteen and Fourteen Thousand Dollars.

Q Do you know, do you have an exact amount, do you know?

A No, I don't.

Q It's all been paid, haven't they?

A Yes.

Q Now, during all this period of time, you were a regular employee of Cummins Engine Company, weren't you?

A That's correct.

Q And you still are?

A Yes.

Q You haven't been laid off, or anything like that have you?

A Not yet."

Mrs. Skaggs contends this cross-examination violated the court's order and thereby prejudiced her case. We disagree. Although this cross-examination comes close to violating the motion in limine, we do not believe it amounted to an actual violation of the order and we find no reversible error.

## III. PRE–EXISTING DISEASE INSTRUCTION

Mrs. Skaggs' next allegation of error is based on final instruction number 11 which was submitted by Mr. Davis and given by the court. The court instructed the jury:

"If you find that Plaintiff had a pre-existing condition or disease in her neck and that the accident in question did in fact aggravate such pre-existing condition, you should assess only those damages directly and proximately resulting from such aggravation and not from the disease or pre-existing condition itself.

If, however, you find that the Plaintiff had a pre-existing condition or disease in her neck and that the accident in question did not aggravate such pre-existing condition, then you should find for the Defendant and against the Plaintiff on that issue."

This instruction was objected to by Mrs. Skaggs on the grounds that it was confusing, misleading and misstated the law, that the instruction did not completely cover all of her alleged damages, and that it was an erroneous mandatory instruction. We do not find this instruction to be confusing or misleading and we believe it accurately recites the law of our state. In *Louisville, N. A. & C. Ry. Co. v. Jones*, (1886) 108 Ind. 551, 9 N.E. 476 the defendant in that case objected to an instruction similar to the one given in this case. That instruction read:

"If you find from the evidence that the plaintiff was diseased at and before the

accident, and that her present condition is attributable to such former diseased condition, and not in any manner or part attributable to the injuries received in the railroad accident, and that plaintiff in fact received no injuries from said accident, then you would have to find for defendant. If you find that the plaintiff was diseased at and before the accident, but that by the accident her disease has been aggravated or intensified, then you will give her damages for just such injuries as she has sustained which are the result of the accident. If you find from the evidence that plaintiff, prior to the accident, was sound and free from disease, and that by reason of the injury received in the accident she has become crippled, diseased, disabled, and permanently injured, then you will assess such a sum as will compensate her fairly for the injuries thus sustained."

*Id.* at 570, 9 N.E. 485. The Supreme Court in deciding that case found this instruction correctly stated the law. Had the jury found for Mrs. Skaggs, she would only have been entitled to damages resulting from the aggravation of the spondylitic condition.

Mrs. Skaggs' second objection to the instruction is the instruction failed to take into account the cervical strain injury she suffered in addition to the injury she suffered stemming from her diseased condition. In response to this objection the trial court added the final words "on that issue" to instruction number 11 before it was read to the jury. Thus the instruction correctly stated the law on the issue of the aggravation of the pre-existing disease and did not purport to address or include the cervical

strain injury. Since Mrs. Skaggs did not tender an additional instruction covering the cervical strain injury, and since the instruction given was correct as far as it went, any error arising from the incompleteness of instruction number 11 has been waived. *Thornton v. Pender,* (1978) 268 Ind. 540, 377 N.E.2d 613.

■ Lastly Mrs. Skaggs argues instruction number 11 is a mandatory instruction, that "it tells the Jury that if the Plaintiff has either a pre-existing condition or disease and that the accident in question only aggravated the pre-existing condition, then the Jury must find for the Defendant," and that as a mandatory instruction it is erroneous because it does not account for the cervical strain injury. We do not interpret the instruction as interpreted by Mrs. Skaggs in her brief. As a matter of fact, her interpretation appears to be the converse of what the instruction actually says; if you find the accident aggravated Mrs. Skaggs' pre-existing condition, you should assess damages directly resulting from the aggravation. Nor do we find this instruction to be a mandatory instruction. As stated in *Illinois Central Gulf Railroad Company v. Parks,* (1979) Ind.App., 390 N.E.2d 1073, 1077, "A mandatory instruction is one which unequivocally charges the jurors that, if they find from a preponderance of the evidence that a certain set of facts exists, they must render a verdict in accordance therewith for the plaintiff or defendant." In this case instruction number 11 did not mandate a verdict in favor of either party, it simply instructed the jury on one element of damages. The court did not err in giving instruction number 11.[1]

---

1. In addition to final instruction number 11 the court also gave the following three plaintiff's instructions.

Number 3

"You are instructed that an injured person may recover compensatory damages for injuries sustained, although the Defendant did not know, or could not foresee, that the special or particular injury would be greater to the person upon whom the wrong was actually inflicted than to one in full strength and robust health. A person, feeble or strong, young or old, is entitled to recover full com-

pensation for the injuries actually sustained by the acts of the Defendant."

Number 4

"If you find from the evidence that plaintiff had, before the collision in question, a dormant condition, that is, a condition which was causing no physical difficulty; and if you find from the evidence that as a direct and proximate result of the occurrence the dormant condition, if any there was, became activated; then the plaintiff would be entitled to recover for the activation.''

Number 7

## IV. ADMISSION OF THE PHOTOGRAPH

On cross-examination during her case in chief defense counsel handed Mrs. Skaggs a photograph and asked her if she could identify it. She responded, "Yes, that's a picture of my automobile, but its not a true picture." She also stated the photograph was not a fair and accurate representation of her automobile and she objected to its being admitted into evidence. Since she had identified the automobile in the photograph as hers the court overruled her objection. Later, when Mr. Davis was on the stand he was presented the photograph and he testified it was a fair and accurate representation of what Mrs. Skaggs' car looked like on the day of the collision. On appeal Mrs. Skaggs argues the court committed reversible error in admitting the photograph despite her testimony that it was not a true and accurate photograph of her automobile.

Any error committed by the court in admitting the photograph though Mrs. Skaggs was cured when Mr. Davis testified the photograph was a true and accurate representation of her automobile. A similar conclusion was reached in *Anthony Wayne Oil Co. v. Barall*, (1942) 111 Ind.App. 670, 42 N.E.2d 370 where the court found a contract had been erroneously admitted but the error had been subsequently cured when additional evidence was introduced.

## V. THE COLLATERAL SOURCE INSTRUCTION

In determining whether the court has erred in refusing a tendered instruction we must decide if the instruction correctly states the law, if there is sufficient evidence in the record to support giving it, and if the substance of the instruction is adequately covered by any other instruction or instructions. *Dahlberg v. Ogle*, (1978) 268 Ind. 30, 373 N.E.2d 159. Mrs. Skaggs sought to have the jury instructed as follows:

"You are instructed that a plaintiff who is entitled to recover on the question of liability, and who has sustained an injury as a direct and proximate result of a defendant's negligence, may recover, not only for all physical

"If you find from the evidence that Plaintiff is entitled to damages, you should not diminish her damages by reason of the fact, if it is a fact, that as a result of her injuries Plaintiff received benefits from her employers. If damages are considered and awarded, you should consider the case as if the Plaintiff has received no such payments or benefits."

In support of this instruction she argues since defense counsel violated the court's order on the motion in limine concerning collateral sources of income, she was entitled to have the jury instructed to disregard any of those collateral sources in arriving at a damage figure. As stated earlier, we do not agree that the motion in limine order was violated, therefore we do not believe there was evidence in the record to support the giving of this collateral income source instruction. It was properly refused.

## VI. FAILURE TO INSTRUCT AS TO PHYSICIAN'S TESTIMONY CONCERNING PAIN

Mrs. Skaggs also contends the court committed reversible error by refusing to instruct the jury that:

"You are instructed that a physician may testify as to his opinion relative to the genuineness of the pain claimed by his patient. You may consider this testimony along with all the other evidence in the case, giving all testimony such weight, as, in you opinion, it deserves."

citing *Murray v. Cottrell*, (1923) 80 Ind.App. 521, 141 N.E. 524. She argues this instruction further instructs the jury on the element of causation. She reasons the doctors' testimony as to the genuineness of her pain during their examinations of her five to seventeen months after the accident somehow corroborated her version of the severity of the accident and the causation of her injuries. Assuming she had evidence that she suffered no pain prior to the accident,

conditions and disabilities caused by the occurrence, but for the aggravation, activation or acceleration of any pre-existing physical injury, disability or infirmity."

this argument may have been convincing if she had seen the doctors the day following the accident but those are not the facts and we do not believe the doctors' testimony concerning her pain months after the accident could in any way be used to corroborate her account of the accident. The instruction was properly refused.

## VII. DR. RAPP'S TESTIMONY

■ During the presentation of his defense Mr. Davis called Dr. George F. Rapp as one of his witnesses. During his examination the following exchange occurred:

" 'Q. Now, Doctor, could you just generally explain what a spondylosis is such as the one that you found Mrs. Skaggs to have?

'A. What she probably had is a cervical disk (sic) degeneration which has come on after a number of years, and it was more severe at the upper level than they fused first. I think that was 5–6, but it was also present at the next level down. After the disk (sic) degenerates, then they get some arthritis in the area, too.

'Q. How does a person normally develop a spondylosis?

'A. Most of it is degenerative process as they get older and the disk (sic) starts to degenerate.

'Q. Would this be sort of a wearing out type of thing?

'OBJECTION—Mr. Mote:

We would propose an objection at this point for improper foundation; it's a conclusion by the witness, and the question is not couched in terms of reasonable medical certainty. And I cite to the Court the Palace Bar Case[2] as in our trial brief....

'JUDGE SILVA:

I'm going to overrule the objection on the grounds that the word 'wearing out' is used as being synonymous with degenerate, and should be within the common experience of the Jury to evaluate, give the proper weight to it. You may answer the question....

'A. Well, maybe rather than wearing out we might say just more of the tissue that the person is born with or inherits when they grow and become older gradually gives away. And there is a lot of reasons for this we do not know. It's not necessarily a wearing out from overuse. It can be something that just develops as a person goes along. For instance, in like the lumbar disk (sic) in the black race, it's not as common as in the whites, so there is a racial thing to it, too.' "

Mrs. Skaggs argues "[t]he evidence which was permitted to be introduced ... allows the jury to speculate as to whether or not the Plaintiff's injuries were purely the result of natural degenerative changes within her spine and were not the result of Defendant's admitted negligence." We disagree.

Dr. Rapp's testimony was not directed to Mrs. Skaggs' specific case, he was simply giving background information on spondylosis. Additionally two of Mrs. Skaggs' medical experts gave similar testimony. Dr. Luros and Dr. Forstes both testified spondylosis was a disease characterized by a deterioration of spinal discs under normal "wear and tear of the neck." Any error in the admission of Dr. Rapps' testimony is harmless if similar evidence has previously been admitted without objection. *Ashley v. City of Bedford*, (1974) 160 Ind.App. 634, 312 N.E.2d 863.

Later Dr. Rapp was asked the following question:

" 'Q. Doctor, is it possible that the treatment that Mrs. Skaggs was given for a period of six weeks, according to her history by Dr. Allen, the Chiropractor, consisting of manipulations and diathermy and so forth could have hastened time that the surgery was required?

OBJECTION—Mr. Mote: [Plaintiff's counsel]

**2.** *Palace Bar, Inc. v. Fearnot*, (1978) 269 Ind. 405, 381 N.E.2d 858.

Objection, Your Honor. The question calls for a conclusion by the witness. It is not couched in terms of reasonable medical certainty as required by the Palace Bar case, and it is a conclusion."

The court overruled the objection and Dr. Rapp gave the following answer:

" 'A. Well, I don't know. If she was having muscle spams [sic] and things, I hate to say that it hastened it. It's hard to say what hastened it without me being right there daily to see her.' "

Mrs. Skaggs argues this "testimony allowed the Jury to speculate that the Plaintiff's injuries were the result of some intervening cause and not the result of the accident." We do not understand how the doctor's "I don't know" testimony could possibly have allowed the jury to further speculate as to the cause of Mrs. Skaggs' injuries.

In fairness to the trial court we feel compelled to explain Dr. Rapp's testimony was given by deposition and the court was aware of the innocuous character of his response before it overruled Mrs. Skaggs' objection.

The judgment of the trial court is affirmed.

MILLER, J., concurs.

NEAL, P. J. (sitting by designation), concurs.