The Louisville, New Albany and Chicago Railway Co. *v.* Schmidt, etc.

Filed March 18, 1893.

---

No. 16,182.

The Louisville, New Albany and Chicago Railway Company *v.* Schmidt, by Next Friend.

Negligence.—*When a Question of Law.—Facts Undisputed.—Right of Defendant to Judgment of Court.*—In an action for damages, where the facts asserted as negligence are found, and do not remain to be settled from conflicting evidence, and the inference therefrom is free from dispute, it is the right of the party charged with negligence to secure the judgment of the court as to whether such facts constitute actionable negligence.

Railroad.—*Right to Make Noise. — Limitation of.— Presumption of Knowledge by the Public of Such Right.*—Railroad companies, in the operation of their trains, have the right to make all reasonable and usual noise incident thereto, whether occasioned by the escape of steam, rattling of cars, etc., and persons whose duties call them near a railroad must be presumed to know of this right, and to act with reference thereto. Where the law confers the right to use a dangerous element, the only restriction on such use is that it be not abused.

From the Hendricks Circuit Court.

*E. C. Field, C. C. Matson, W. S. Kinnan, J. R. Brill* and *L. M. Harvey,* for appellant.

*G. W. Spahr,* for appellee.

Hackney, J.—The appellee, sixteen years of age, approached the crossing of appellant's railway tracks on East street, in the city of Indianapolis, driving a horse

The Louisville, New Albany and Chicago Railway Co. *v*. Schmidt, etc.

hitched to a spring wagon; she was accompanied by two boys, each fifteen years of age, and before going upon the tracks, she alleges she observed an engine of the appellant's standing on the track near the street crossing, in charge of an engineer and fireman; that she stopped and required one of the boys to go upon the tracks to learn of the crossing of trains, and the safety in pursuing her way across the tracks; "that the flagman at the crossing, and the engineer in charge of said engine, and the defendant, each and every one, told her that it was safe and all right for her to drive across said tracks, and that they signaled her, and told her to drive on across. She says that being so told, signaled, and advised by said defendant and by the flagman, she started to drive across said tracks, on said East street, and that when she came to a point on said crossing opposite and near to where said engine was standing, the said defendant, without warning and without notice, suddenly and in a very loud, violent, explosive, and negligent manner, blew off the steam from the boiler of said engine, and carelessly, negligently, and wrongfully suffered the steam to blow off and escape from the boiler of said engine in a sudden, loud, and violent manner, thereby making a very loud, hissing, whistling, screeching, and blowing noise which frightened plaintiff's horse, causing said horse to run away, upsetting said wagon and throwing plaintiff upon the ground," causing the injuries complained of, and all without contributory negligence on her part.

To the complaint alleging the foregoing facts, the appellant's demurrer was overruled, and an exception reserved. Upon an answer in general denial, the cause was submitted to a jury, and resulted in a finding for appellee in the sum of four thousand dollars. With the

general verdict, there was returned answers to interrogatories.

By the assignment of error, the appellant questions the sufficiency of the complaint, the overruling of the motion for judgment on the answers of the jury to special interrogatories, and the overruling of the motion for a new trial.

The alleged actionable negligence of the appellant is, under the circumstances, the affirmative act of blowing off·steam suddenly and in a loud, violent, and negligent manner, and negatively in suffering the steam to blow off suddenly and in a loud, violent, and negligent manner.

From the special interrogatories and the answers of the jury thereto, we find, that the steam escaped only from an automatic safety valve; that said valve was a safe and necessary device on the engine; that it was properly constructed and in good repair, was such as was then generally used on the best engines, and that the discharge of steam therefrom was necessarily incident to the use and the safety of the engine of the appellant. The following are two of the special interrogatories and the answers of the jury thereto:

" 5. Did either the engineer or fireman of defendant cause any whistle to be sounded, or blow off steam from the engine in question, at the time of the accident complained of? Answer. Yes.

"12. Had the engineer any control of the automatic safety valve; if so, what? Answer. By regulating his fire and injecting cold water, he could have controlled it."

The first of the two interrogatories quoted, and the answer thereto, show the finding by the jury of an affirmative act by the engineer or fireman in blowing off the steam. It is true that the interrogatory is subject to crit-

The Louisville, New Albany and Chicago Railway Co. v. Schmidt, etc.

icism, in that it inquires alternatively as to the sounding of the whistle or blowing off the steam. But, presuming in favor of the general verdict, as we must, and remembering that there was no issue as to the sounding, or failure to sound, the whistle, we construe the answer to have related to the inquiry as to blowing off the steam.

The second of the interrogatories quoted, and the answer thereto, find that the engineer, by regulating his fire and by the use of cold water, could have controlled the automatic valve from which the steam escaped, thereby finding, when considered in connection with the other findings which we have summarized, an omission to do that which if done the steam would not have escaped.

The appellant's contention is that the special interrogatories and the answers thereto are inconsistent with the general verdict. To our satisfaction, we have shown that they are not. Unless they are so inconsistent as to override the general verdict, and stand in irreconcilable conflict with it, the motion for judgment was properly overruled. *Louisville, etc., R. W. Co.* v. *Stommel,* 126 Ind. 35; *Ohio, etc., R. W. Co.* v. *Trowbridge,* 126 Ind. 391; *Barnes* v. *Turner,* 129 Ind. 110.

The answer to the fifth interrogatory is a finding of the first charge of negligence, and supports the general verdict instead of contradicting it.

It is urged by the appellant that of the two charges of negligence there is no evidence, and that for this reason the court below erred in overruling the motion for a new trial.

Upon the element of affirmative negligence, as alleged in the complaint, we have been unable to find any evidence in support thereof, and the only evidence which the appellee insists is in support thereof is from the testimony of the boy Halley, as follows:

"Ques. 30. Whereabouts from the engine did it blow off? Ans. Right there at the top of the whistle."

We are unable to perceive that this evidence tended to establish any voluntary action on the part of any one connected with the engine. No other testimony is found in the record from which such tendency can be determined.

Upon the element of negligence alleged to consist in permitting the steam to escape, we do not find the question so free from embarrassment. The appellee insists that the evidence shows that the steam pressure which caused the safety valve to raise and permit steam to escape could have been avoided by the engineer in drawing the fire from his engine, or in injecting cold water into the boiler, or by turning the steam into the water-tank. The only evidence of the use of such methods for the reduction of the pressure of steam is from two expert witnesses introduced by the appellant, and each testified to the impracticability of adopting any one of such methods; that to drive the steam into the tank through the injector so affects the injector that it will not perform its office properly in feeding. The method of reducing pressure, by injecting cold water into the boiler, was shown to be impracticable when there were over three gauges of water in the boiler, a condition rarely existing when starting out on a trip, and a condition not shown to exist in this instance. That to reduce the pressure by the drawing of the fire would require such delay in restoring the fire, necessary in starting on a trip, as to embarrass the operation of the train by schedule time, and it does not appear that the reduction of the fires would give an immediate relief from the pressure of steam.

It is further insisted, by the appellee, that it was negligence to stop the engine near to the crossing of a street

frequently travelled by the public.   This, as an element of negligence, is not alleged in the complaint.

It is further contended that it was negligence to invite the children to cross the tracks when it was known to the engineer that the steam pressure was at the point of escaping through the safety valve.   It is not alleged as negligent to have invited the children to cross the track under the circumstances claimed to have existed; nor is there any evidence that the engineer knew, or might reasonably have known, that the steam would escape as the wagon was crossing the track.

From the evidence, on the most favorable view for the appellee, upon the question of an invitation to cross, and an assurance that she could do so safely, the contention of the appellee is not supported.   The only evidence of any statement by appellant's servants is that, when asked if they could go across, it was answered: "Yes; we will not pull out for a half hour yet."   This answer does not, by any possible construction, give assurance against any contingency, except the moving of the engine, while the appellee was crossing.

The only evidence of the time the engine was expected, by the engineer, to remain near the East street crossing, was that the time for starting was up, and that he was awaiting orders at any moment.

Our embarrassment has been in determining how far the finding of the jury, by the general verdict, was an adjudication of negligence as a question of fact, and as to the privilege of the court to determine whether the facts were such that negligence, as a question of law, might be inferred therefrom.   It is often a difficult question to determine the line dividing the privilege of the jury from the power of the court in determining what facts constitute actionable negligence.   But we feel safe in the conclusion that when the facts asserted as negli-

gence are found, and do not remain to be settled from conflicting evidence, and the inference therefrom is free from dispute, it is the right of the party charged with negligence to secure the judgment of the courts as to whether such facts constitute actionable negligence. *Conner* v. *Citizens' Street R. R. Co.*, 105 Ind. 62; *Woolery, Admr.*, v. *Louisville, etc., R. W. Co.*, 107 Ind. 381; *Wabash, etc., R. W. Co.* v. *Locke, Admr.*, 112 Ind. 404; *Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261; *Mann* v. *Belt R. R. and Stock Yard Co.*, 128 Ind. 138.

In the case of *Woolery* v. *Louisville, etc., R. W. Co.*, *supra*, it is said that "it can not be maintained that a civil case can arise in which the court is incompetent to declare the law upon the facts when the facts are either admitted or satisfactorily proved. Where the essential facts are ascertained in any case, the litigants have a right to call upon the courts to declare the law. *Wannamaker* v. *Burke*, 111 Pa. St. 423."

In the *Wabash, etc., R. R. Co.* v. *Locke*, *supra*, it is said that ' the evidence must affirmatively establish circumstances from which the inference fairly arises that the accident resulted from the want of some precaution which the defendant ought to have taken. *Hayes* v. *Michigan, etc., R. R. Co.*, 111 U. S. 228."

Taking the evidence of the facts properly in issue, and giving it the view most favorable to the appellee, we have that condition of the record which requires the courts to determine whether negligence can reasonably be inferred. We have stated the facts relating to the alleged omission by the appellant charged to constitute negligence. Does it constitute negligence? ·

As well said by counsel for appellant: "The business of the country is dependent in a very large measure upon the railroads. Railroad operation is indeed largely the mere agency of the public. It is the public which

authorizes the traffic of the country to be handled in this way. The public have said that the best agency for the transaction of its business is the railroad, and that the best motor power for the transportation of its traffic over railroads is steam; that this agency is only held to a prudent use of steam; that if the automatic safety valve is the best thing that has been devised, and is approved by its general use for the safety of the locomotive and the protection of life, the measure of prudence is fulfilled; that if steam escapes in such legitimate use, its escape is a necessary incident to such authorized business, for which there is no liability.''

The law, in conferring the right to use an element of danger, does not accompany such right with a penalty. The right is conferred with but one limitation—that, in the exercise thereof, it be not abused.

The safety valve, as shown by the uncontroverted testimony of the appellant's witnesses, and as found by the jury, is not only a device in general use upon the best railway engines, but it is an instrument for the security of the lives of the travelling public and the operatives of railways and of the property of the companies. We learn from the evidence that its action is controlled only by the accumulation of steam to that pressure beyond which the safety of the engine boiler is endangered. It is attached and regulated, in the construction of the engine, so that when the steam pressure reaches, as in this instance, one hundred and forty pounds, the valve is forced from its seat and the steam escapes until it is reduced below the danger pressure, a point ascertained by proper tests in the construction. It can not be lifted by any other agency than the steam pressure. The propriety of such an instrument in operating a steam engine is not questioned, while we find that the jury expressly adjudged its value in answering the twentieth interroga-

tory, as follows: ''20. Was the discharge of steam from the automatic safety valve on defendant's engine in question necessarily incident to the use and safety of the engine? Answer. It was.''

As said in *Whitney* v. *Maine, etc., R. R. Co.*, 69 Me. 208, in speaking of the privilege of railway companies in operating their trains, they have ''necessarily the right to make all reasonable and usual noise incident thereto, whether occasioned by the escape of steam, rattling of cars, or other causes,'' and we may add that persons whose duties call them near a railway must be presumed to know of this right and to act, for their own safety, with reference to such right. *Norton* v. *Eastern R. R. Co.*, 113 Mass. 366; Rorer on Railroads, page 704.

We do not decide that upon issues properly framed there may be no recovery for an abuse of the right of the railway company to permit the escape of steam from an automatic safety valve, but under the facts in this case, having reference to the issues here formed, we conclude that there was no abuse of the right. If, as we have found, the evidence justified but one conclusion upon the part of the engineer as to the need of sufficient steam pressure for the immediate moving of his train, and if, as testified without contradiction, that pressure would not have existed by drawing the fires, then there could be no reasonable requirement that he should have withdrawn his fires. On the contrary, it was his privilege and his duty to keep the steam at such gauge as would enable him to pursue his course without delay in rebuilding the fires extinguished for the accommodation of the appellee.

A rule which would require the engineer to draw his fires, when stopping for a reasonable time at a highway or street crossing, would so embarrass the operation of railways as to destroy, in a great measure, the effective

systems of travel now justly the pride of this country. If the delay at the crossing is for an unreasonable time, and is such as to imperil the lives or limbs of persons having an equal right to use the crossing with their horses and vehicles, or to delay their use of the crossing an unreasonable time, possibly the engineer's duty would not be the same as where his delay is only for a reasonable time. It is enough to say that no such question is here presented upon the complaint or by the evidence.

We conclude that the court below erred in overruling the motion for a new trial, the verdict of the jury not having been sustained by the evidence.

The judgment is reversed, with instructions to the circuit court to grant a new trial.

Filed March 17, 1893.