Rodgers *v.* The Baltimore and Ohio Southwestern R. W. Co.

When the note and mortgage were executed, Boyd, instead of paying over the $45.00 loaned by him, gave a check for the amount, payable to Mrs. Radabaugh. The money so borrowed was used to pay the indebtedness of said Homer C. Radabaugh, and no part thereof was used for the improvement or betterment of the separate property of his wife. Said Dora B. Radabaugh was, when the mortgage was executed and until the trial, the wife of her codefendant Homer C. Radabaugh, and at the time of the execution of said mortgage said real estate was, and at all times since has been, the separate property of said Dora B. These facts are clearly sufficient to sustain the finding of the court. The fact that the check was made payable to the wife can make no difference, the money was borrowed by the husband to pay his own debts, and he so informed Truman O. Boyd at the time, and the money so borrowed of Boyd was used for that purpose; and Boyd could not by making the check for $45.00 or $48.00 payable to Mrs. Radabaugh, change the legal effect of the transaction or make her a principal, when under the law as declared by this court she was only a surety. The other items that went into the note for $131.78 were outstanding liabilities of the husband. It is true there was evidence given to the contrary on behalf of the appellant, but in determining the question presented we can only consider the evidence sustaining the action of the court. *Lawrence* v. *Van Buskirk*, 140 Ind. 481. Judgment affirmed.

_____

RODGERS *v.* THE BALTIMORE AND OHIO SOUTHWESTERN RAILWAY COMPANY.

[No. 18,269.    Filed Feb. 23, 1898.    Rehearing denied May 10, 1898.]

RAILROADS.— *Blowing Whistle.*— *Damages.* — *Complaint.* — A complaint against a railroad company for damages for personal injuries

| | |
|---|---|
| 150 | 397 |
| 150 | 199 |
| 150 | 397 |
| 156 | 352 |
| 150 | 397 |
| 167 | 209 |
| 167 | 340 |
| 167 | 341 |

Rodgers *v.* The Baltimore and Ohio Southwestern R. W. Co.

which alleges in general terms that defendant carelessly, negligently, recklessly, and without any necessity whatever, caused the whistle of its locomotive to be blown, thereby frightening plaintiff's team, causing it to run away, and resulting in the injuries of which he complains, without any fault on the part of plaintiff, states a cause of action as against a demurrer for want of facts.  *pp. 398-403.*

RAILROADS.—*Blowing Whistle.—Not Negligence Per Se.*—The mere sounding of a locomotive whistle, even at a place of extraordinary danger, is not negligence *per se*, but a railroad company is liable for its negligence in blowing a locomotive whistle from which horses are frightened and caused to do injury.  *pp. 401, 402.*

PLEADING.—*Demurrer.*—A demurrer does not raise the question of the sufficiency of a complaint where such defect could properly be reached by a motion to make the allegations of the complaint more specific.  *p. 403.*

From the Clark Circuit Court.   *Reversed.*

*Jonas G. Howard,* for appellant.

*Charles L. Jewett, Henry E. Jewett, Judson Harmon* and *E. N. Strong,* for appellee.

HACKNEY, J.—This was an action by the appellant for damages resulting in his personal injury, and from the negligence of the appellee.

The lower court sustained the appellee's demurrer to the complaint, and that ruling alone is assigned as error. It was alleged that the Louisville and Jeffersonville Bridge Company had just completed its bridge across the Ohio river, between the cities of Louisville and Jeffersonville, together with the approaches or viaducts leading to such bridge; that said bridge had not been opened to the regular public traffic, and notice had been given that it would not be so opened until the first of September, of which fact appellant had knowledge; that on the 18th day of August a construction train, heavily laden, had made two or three trips across said bridge, the first train which had ever crossed the same; that on the 19th day of August, at a time when the appellant, who was a teamster, was driving his team along Market street,

in the city of Jeffersonville, at or near the intersection of said street and the viaduct, at the north end of said bridge, and when he was about to pass under said viaduct, the appellee ran a locomotive and a passenger coach, at the speed of twenty miles an hour upon and over said viaduct, and from off said bridge to the said intersection of said Market street and the viaduct; that as said locomotive approached said intersection the appellee "carelessly, negligently, recklessly, and without any necessity whatever, caused the whistle of said locomotive to be blown," thereby frightening appellant's team, causing it to run away, and resulting in the injuries of which he complains.

It was further alleged that "said injuries * * * resulted solely from the negligent, careless, reckless, and unnecessary act of said defendant in blowing said whistle of said engine, and in having failed to notify the public that said train would cross said river, over said bridge, on said day, which were the sole and only causes of said injuries, and of said mules becoming frightened, and of their running away, and without any fault or negligence on behalf of said plaintiff."

It was alleged also that said intersection was in a populous part of said city, and was so obstructed by buildings and the viaduct that an approaching train from the south could not be seen by one approaching the intersection upon said Market street, and that he could not hear said locomotive and car until he reached the said intersection, and when they were so near the intersection that he could not avoid the meeting.

The complaint proceeds upon the theory of negligence, which is alleged to have consisted in the unnecessary act of blowing the whistle at the time and

place.   Counsel for the appellant expressly disclaims any other theory, or that the alleged negligence consisted in any other act or omission.

The sufficiency of the complaint is denied by the appellee upon the proposition that railway companies are not liable for injuries resulting from the frightening of horses occasioned by the noises necessarily incident to the proper operation of their lines.

This proposition is well supported by authority. *Louisville, etc., R. W. Co.* v. *Schmidt*, 134 Ind. 16; *Ohio, etc., R. W. Co.* v. *Trowbridge*, 126 Ind. 391; *Baltimore, etc., R. W. Co.* v. *Thomas*, 60 Ind. 107; *Peru, etc., R. R. Co.* v. *Hasket*, 10 Ind. 409, 71 Am. Dec. 335; *Lamb* v. *Old Colony R. R. Co.*, 140 Mass. 79 2 N. E. 932; *Norton* v. *Eastern R. R. Co.*, 113 Mass. 366; *Whitney* v. *Maine Central R. R. Co.*, 69 Me. 208; *Yingst* v. *Lebanon, etc., R. W. Co.*, 167 Pa. St. 438, 31 Atl. 687; *Heininger* v. *Great Northern R. W. Co.*, 59 Minn. 458, 61 N. W. 558; Rorer on Railroads 704. The application of this proposition will be considered further along.

The use of the steam whistle is necessary in railroading as a warning of approaching trains, both to enable those approaching the tracks to avoid collision, and to save travelers upon the trains from the results of collision, as well as to protect the company from the destruction of its property.   Its use is not only sanctioned by the legislation of this State, but, as a signal of approach to highways, is required.   Its use is often proper when possible injury may result, as if in the case before us, a person had been walking upon the viaduct ahead of the train, at some point north of the crossing of Market street, and had been discovered by the engineer as the train reached Market street, and it was apparently necessary to warn him of the approaching train.   The possible frighten-

ing of a horse properly in the vicinity, and the possible collision with the footman would present an instance where the signal could properly be made. The safety of the footman, of the train, and of those on board could not reasonably be hazarded for the chance of frightening a horse not known to be present. In such an instance the signal would certainly be a proper incident of the operations of the railway. Nor should the rights of signaling be made to depend upon the actual existence of a necessity for it, for the footman might be aware of the approach of the train and intend to step aside in safety. The blowing of the whistle in that case would not be necessary, but to the engineer might reasonably appear to be necessary and would undoubtedly be proper.

It results from these conclusions, and has been held by this court, that the mere sounding of the locomotive whistle, even at a place of extraordinary danger, is not negligence *per se*. *Cincinnati, etc., R. W. Co.* v. *Gaines*, 104 Ind. 526, 54 Am. Rep. 334; *Indianapolis, etc., R. W. Co.,* v. *Boettcher*, 133 Ind. 82. See, also, Elliott's Railroads, section 1264, and Wharton's Neg., section 836.

It is also true that for negligence in the blowing of the locomotive whistle, and the making of other noises, such as permitting steam to escape, from which horses are frightened and caused to do injury, railway companies are liable. Elliott on Railroads, section 1264; *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166; *Indianapolis, etc., R. W. Co.* v. *Boettcher, supra; Louisville, etc., R. W. Co.* v. *Schmidt, supra;* Wharton's Neg., section 836; *Hudson* v. *Louisville, etc., R. R. Co.,* 14 Bush. (Ky.) 303; *Omaha, etc., R. W. Co.* v. *Clark*, 35 Neb. 867, 23 L. R. A. 504, 55 Am. & Eng. R. W. Cases, 145, 53 N. W. 970; *Georgia R. R. Co.* v. *Carr*, 73 Ga. 557.

The learnéd counsel for the appellee suggests that the liability must depend upon the presence of special facts, such as the knowledge of the presence of horses which are frightened or which will probably become frightened, and cause injury.

No doubt the presence of such special facts may be influential in determining the existence of negligence, and certainly would tend strongly toward the conclusion of wilfulness, but we have not met with an authority to the effect that negligence in the use of the whistle or in suffering steam to escape, or the like, depends upon any such special facts. The existence of negligence, in a case like this, should be determined, as in other cases, from all of the facts and circumstances present at the time, and with regard for the rights and duties of the parties respectively. It is but natural that horses should become frightened by sudden and extraordinary sounds, a fact to be observed alike by railroad operatives and by those who drive the horses near railways. It is proper for companies to employ the locomotive whistle, and it is proper also for a teamster to drive his team upon a public way upon which a railway is operated. The care which the driver of the team should employ is of the general character of that which the driver of the locomotive should employ: a reasonable care for his own safety, and for that of each other, and each must, in his use of the way, to a reasonable extent, anticipate the use by the other.

The complaint, in general terms, alleges the blowing of the whistle "carelessly, negligently, recklessly, and without any necessity whatever."

Doubtless this allegation could have been made more specific, but with that question we are not concerned further than to say that, if a motion to that effect were the proper step, a demurrer does not raise the question.

In *Cincinnati, etc., R. W. Co.* v. *Gaines, supra; Louisville, etc., R. W. Co.* v. *Jones,* 108 Ind. 551; *Pittsburg, etc., R. W. Co.* v. *Hixon,* 110 Ind. 227; *Ohio, etc., R. W. Co.* v. *Walker,* 113 Ind. 196; *Deller* v. *Hofferberth,* 127 Ind. 414; *Board, etc.,* v. *Huffman,* 134 Ind. 1; *Evansville, etc., R. W. Co.* v. *Krapf,* 143 Ind. 647; *Louisville, etc., R. W. Co.* v. *Bates,* 146 Ind. 564, and in other cases, this court has decided that, as a rule of pleading, it is sufficient, as against a demurrer, to characterize an act as having been negligently or carelessly done.   In our opinion the complaint stated a cause of action, and the appellee's demurrer should have been overruled.   The judgment is reversed.