THE CHICAGO AND ERIE RAILWAY COMPANY v. CUMMINGS, ADMINISTRATOR, ETC.

[No. 2,499.   Filed May 24, 1899.   Rehearing denied Feb. 20, 1900.]

PLEADING.—*Executors and Administrators.—Capacity to Sue.*—A complaint which shows on its face that plaintiff was the administrator of the estate of decedent, and that the action was brought for the benefit of the widow of decedent, who was his sole heir, is sufficient to show the capacity in which plaintiff sued without averring in express terms his appointment and qualification as such administrator.   *pp. 195, 196.*

SAME.—*Demurrer.—Waiver.*—Where a defendant demurs to a complaint for want of facts, he thereby waives any possible objection that plaintiff did not have legal capacity to sue.   *p. 196.*

NEGLIGENCE.  —  *Railroads.  —  Frightening Horses.  —  Complaint.*  — A complaint against a railroad company for the death of plaintiff's decedent, charging that the decedent's injury and death resulted, from the careless, negligent and unnecessary sounding of the whistle on defendant's locomotive, which frightened decedent's horses so that they ran away, is sufficient as against a demurrer.   *pp. 196-203.*

MOTIONS.—*Striking Out Hearsay Evidence.*—Available error cannot be predicated on the action of the court in sustaining a motion to strike out hearsay evidence, although no objections were made to the evidence when given, and no grounds were given for striking it out.   *pp. 204, 205.*

EVIDENCE.—*Expert Testimony.—Opinion Evidence.*— In an action against a railroad company for damages caused by the alleged negligence of defendant in unnecessarily sounding its locomotive whistle, the opinion of an engineer that blowing a whistle at such time and place was unnecessary was incompetent.   *pp. 205-208.*

SAME.—*Res Gestae.*—In an action against a railroad company for damages resulting from the alleged negligence of defendant in un-

necessarily sounding its locomotive whistle, the testimony of a woman, who was a square and a half away from the scene of the accident, that she heard the noise and remarked to her husband that "it was brutish the way they whistled," was incompetent as part of the *res gestae.  pp. 208-211.*

From the Huntington Circuit Court.  *Reversed.*

*W. O. Johnson, J. B. Kenner* and *U. S. Lesh,* for appellant.

*M. L. Spencer, W. A. Branyan* and *L. M. Ninde,* for appellee.

WILEY, J.—Appellee was plaintiff below, and brought this action to recover damages for the death of the decedent resulting from the alleged negligence of the appellant.  The complaint, upon which the case went to trial, was originally in two paragraphs, but, pending the trial, appellee dismissed as to the first paragraph, and the trial proceeded to final judgment upon the issues joined as to the second paragraph of complaint.

The substantial and material averments of the second paragraph of the complaint are as follows:  That appellant is a corporation, owning and operating a railroad which runs through the village of West Point, in Huntington county, Indiana; that said railroad crosses a public highway where it passes through said village, which highway is located on the west line of section twenty-two, township twenty-nine north of range eight, at a point 400 feet north of the southwest corner of said section, extending nearly in an east and west course; that on the north side of said railroad, and adjoining said highway on the east, a lumber yard and sawmill are situated, and the view over the same from the west is open and unobstructed; that on April 9, 1896, decedent was engaged at said mill-yard, about ninety feet north of the railroad track, in loading lumber on a wagon, to which a team of horses was hitched; that said team was ordinarily quiet, well broken, easily controlled, not subject

to fright at passing trains, and had frequently stood at the same place while trains were passing on said railroad track without scaring; that on said day, while decedent was so employed, a train of freight cars, under the management and control of appellant's servants and employes, passed through said village from the west to the east; that when the locomotive drawing said train was about seventy-five feet west of said highway, and about 150 feet west of decedent, running at the rate of ten miles per hour, and while in full and open view from the cab on said locomotive, the engineer carelessly and negligently opened the valve, and caused a long, loud, and piercing whistle to be emitted and continued from the point above mentioned until the locomotive had passed the point opposite to where the decedent was engaged in loading lumber; that when said whistle began to sound, decedent took hold of the bridle of one horse and directed his son to take hold of the other, and that as the locomotive approached, with the whistle still sounding, the horses became frightened and struggled to run away; that decedent and his son, who was twelve years old, made every effort in their power to control them, which they would have accomplished but for the continued sounding of the whistle, which was so continued before reaching and while passing the decedent, and while in full view of the decedent and his team, and while decedent and his son were using vigorous efforts to control and hold said horses, and while the horses were struggling to get away; that when the engine was about thirty feet west of where decedent was standing the said team broke away from decedent and his son, and ran away, throwing them down, injuring, striking, and wounding decedent, from the effects of which he soon died. It is further averred that at the point where decedent was standing, appellant well knew that teams of horses were frequently standing, while persons were engaged in necessary business, and that there was no requirement under the rules of the company for sounding the

whistle at or near said place, and that the sounding of the whistle there was unnecessary, and unexpected by decedent. It is also alleged that the injury to and the death of decedent was wholly without fault or negligence on his part; that he left surviving him as his heir at law his wife, and that this action was brought for her use and benefit.

To this paragraph of complaint appellant addressed a demurrer for want of sufficient facts, which was overruled, and an exception reserved. The issue was joined by answer in general denial, trial by jury, a general verdict for appellee for $2,500, and with the general verdict the jury answered and returned certain interrogatories addressed to them. The appellee moved the court for judgment on the general verdict, and the appellant moved for judgment in its favor on the answers to interrogatories, notwithstanding the general verdict. The court sustained the appellee's, and overruled the appellant's motion for judgment. Appellant moved for a new trial, which was overruled, and time given for filing a bill of exceptions.

Appellant has assigned error as follows: (1) That the second paragraph of complaint does not state facts sufficient to constitute a cause of action; (2) that the court erred in overruling the demurrer to the second paragraph of complaint; (3) the court erred in overruling appellant's motion for judgment in its favor on the answers to interrogatories; (4) the court erred in sustaining appellee's motion for judgment; and (5) the court erred in overruling appellant's motion for a new trial. The second and third specifications of the assignment of errors may be considered together.

It is first urged that the second paragraph of complaint is bad because it does not specify or state the character in which appellee sued. This objection has no merit. The complaint on its face shows that the appellee was the administrator of the estate of Frederick Rohlfing. True it does not aver, in express terms, that he was duly appointed

and qualified, but it does show the capacity in which he sues. It also shows that the action was brought for the benefit of the widow of the decedent, who was his sole surviving heir. These are sufficient allegations to show the capacity in which appellee sued. It must be remembered that the demurrer to the complaint was for want of facts, and not that the appellee did not have legal capacity to sue. By demurring for want of facts, appellant waived any possible objection that the appellee did not have legal capacity to sue. *Ohio, etc., R. Co.* v. *McClure*, 47 Ind. 317. The objection thus urged is not tenable.

We pass now to a consideration of the complaint as to the sufficiency of the facts pleaded. It is a plain proposition that the complaint proceeds upon the theory that the decedent's injury and death resulted from the alleged careless, negligent, and unnecessary sounding of the whistle on appellant's locomotive, which frightened the horses, so that they ran away, etc.

It appears from the complaint that the decedent was ninety feet north of the railroad track and 150 feet east of the highway; that for some distance before coming opposite to where decedent was, he was in full view, and that no obstructions intervened between him and the approaching train; that when he saw the train approaching, he took hold of the bridle of one of the horses, and directed his foster-son to take hold of the other, and they were in that position as the train approached.

A railroad company having a legal right to operate its road by running trains propelled by steam may make all noises usually incident thereto, whether occasioned by the escape of steam, rattling of cars, or other necessary causes. *Whitney* v. *Maine, etc., R. Co.*, 69 Me. 208. And they may thus operate their trains, although the noises usually incident thereto may cause much annoyance and danger to those who are near them, or driving horses in their immediate vicinity. See *Bailey* v. *Hartford, etc., R. Co.*, 56 Conn.

444, 16 Atl. 234, 37 Am. & Eng. R. Cas., 483; *Norton* v. *Eastern R. Co.*, 113 Mass. 366. Rorer on Railroads, p. 704, says: "The frightening of horses or teams, and injury resulting therefrom, by the cars or other property of a railroad, and the legitimate use thereof, at the depot or other place of the company, is not a ground of action against the company, if the company do no more than use the same in a proper manner, and are guilty of no wrong act or negligence causing the same."

In *Billman* v. *Indianapolis, etc., R. Co.*, 76 Ind. 166, 40 Am. Rep. 230, it was said: "The mere sounding of the whistle cannot be deemed negligence, although blown in close proximity to the highway, and even though there are horses in the immediate vicinity."

In *Cincinnati, etc., R. Co.* v. *Gaines*, 104 Ind. 526, 54 Am. Rep. 334, it was held that the sounding of a locomotive whistle, even at a place of extraordinary danger, where teams are likely to be frightened thereby, is not negligence *per se*, and to justify an inference of negligence from such act, the party having the burden at issue must show that it was done under such circumstances as made it at the time negligent.

In Kansas, in a case involving the principles we are now discussing, it was said: "It cannot be questioned that defendant's train was rightfully on its track, and that the blowing of a whistle, and the letting off of steam with its attendant noise, are not *per se* acts of negligence, or evidence of wrongful conduct." *Culp* v. *Atchison, etc., R. Co.*, 17 Kan. 475.

If the servants of appellant were guilty of no unlawful conduct, while exercising a lawful right, the fact that the decedent's team took fright at the sound of the whistle can not make appellant liable. *Cincinnati, etc., R. Co.* v. *Gaines, supra.*

In the case of *Philadelphia, etc., R. Co.* v. *Stinger*, 78 Pa. St. 219, it was held that the mere fact of whistling furnishes no presumption of negligence.

In *Favor* v. *Boston, etc., R. Co.*, 114 Mass. 350, it was said: "It has the right to do lawful acts upon its own premises, and is not responsible for injurious consequences that may arise from such acts, unless the acts are negligently and improperly done."

In all the cases cited, and in many others to the same effect, the rule is stated that a railroad company, in the legitimate operation of its road, is not liable for injuries resulting from noises, such as the escape of steam, the sounding of the whistle and the ringing of the bell, and may make all noises usually incident thereto, without becoming liable for injuries resulting therefrom, when it is without fault or negligence. This rule rests upon the ground that in the operation of a railroad it is necessary to use steam, whistles, and bells, and that noise from the running of trains, cars, and locomotives is a natural incident thereto; and further, that a railroad company has the right to make use of such means, although the noises, etc., usually incident thereto may cause much annoyance and even danger to those who may be in proximity thereto, or driving horses near them. But it has never been held, so far as we know, that a railroad company can exonerate itself from liability where injury has resulted from the unlawful or negligent use of steam, whistles, and bells, resulting to the injury of another, where such injured party was free from fault; but, on the contrary, the opposite rule prevails.

Mr. Rorer, in his work on railroads, at page 704, in discussing the rule in regard to frightening horses, says: "But if the acts of the servants occasioning the fright are wanton and malicious, and be done in the discharge of their business, by using the appliances of the company, such as wanton whistling of the engine, and the reckless discharge of steam, the company will be liable." *Peru, etc., R. Co.* v. *Hasket*, 10 Ind. 409, 71 Am. Dec. 335; *Ohio, etc., R. Co.* v. *Cole*, 41 Ind. 331.

Appellant, however, urges with much force and plausibil-

ity that the complaint before us is insufficient on the ground that a railroad company is not liable for injuries resulting from the frightening of horses occasioned by the noises necessarily incident to its proper operation. With this proposition of appellant we fully agree, for it is supported by many authorities. *Louisville, etc., R. Co.* v. *Schmidt*, 134 Ind. 16; *Ohio, etc., R. Co.* v. *Trowbridge*, 126 Ind. 391; *Baltimore, etc., R. Co.* v. *Thomas*, 60 Ind. 107; *Peru, etc., R. Co.* v. *Hasket*, 10 Ind. 409; *Rodgers,* v. *Baltimore, etc., R. Co.*, 150 Ind. 397; Rorer on Railroads, 704; *Heininger* v. *Great Northern R. Co.*, 59 Minn. 458.

It has been held by the Supreme Court that the mere sounding of the locomotive whistle, even at a place of extraordinary danger, is not negligence *per se.* *Cincinnati, etc., R. Co.* v. *Gaines*, 104 Ind. 526; *Indianapolis, etc., R. Co.* v. *Boettcher*, 131 Ind. 82. To the same effect is Elliott on Railroads, §1264, and Wharton on Neg., §836. But, on the other hand, it has been held that for negligence in sounding the locomotive whistle, and the making of other noises, such as permitting steam to escape, etc., whereby horses are frightened, resulting in injury, railway companies are liable. Thus Judge Elliott, in his work on railroads, §1264, said: "Although a railroad company is not liable, under ordinary circumstances, for the fright of horses caused by the operation of its road in the usual manner, it is liable for frightening horses and causing injury by unnecessary and excessive whistling or letting off steam under such circumstances as to constitute negligence or wilfulness." See, also, *Billman* v. *Indianapolis, etc., R. Co.*, 76 Ind. 166; *Louisville, etc., R. Co.* v. *Schmidt, supra; Omaha, etc., R. Co.* v. *Clark*, 35 Neb. 867, 53 N. W. 970, 23 L. R. A. 504; *Chicago, etc., R. Co.* v. *Dunn*, 52 Ill. 451. Many other cases might be cited, but the rule is so firmly established that it would be useless.

Counsel for appellant have cited us to the case of *Aurelius* v. *Lake Erie, etc., R. Co.*, 19 Ind. App. 584, as being

in point, and of controlling influence here. We do not think the facts averred in the two complaints are at all similar. In the Aurelius case it was averred that the appellant's servants were running a hand-car approaching a highway crossing; that appellee was driving a horse and was near the crossing; that such servants were running the hand-car at great speed, and while approaching the crossing they saw appellant's horse was greatly frightened; that he was in great peril; that they knew that the horse was frightened at the car, and yet with knowledge of these facts, they continued to run the car toward the horse, thus increasing his fright, rendering him unmanageable, etc. Thus we see at a glance that there is no similarity in the statement of facts. There the complaint was held good, not on account of the manner and speed of running the car, but because after seeing the frightened horse, knowing the cause of the fright, and seeing the peril of appellee, the servants took no precaution to avert the threatened peril, but increased it by their own acts of negligence. Here there is no averment that appellant's servants in charge of the locomotive saw the decedent, his team, or knew of their presence, and the negligence charged is the long, continuous, and unnecessary sounding of the whistle, which frightened the horses, resulting in the injury complained of. Such conduct, as we have seen, constitutes actionable negligence.

The complaint in this case is very like that in *Rodgers* v. *Baltimore, etc., R. Co.*, 150 Ind. 397. In that case the injury complained of resulted from a team of horses becoming frightened from the blowing of a locomotive whistle while such locomotive was passing over a bridge. Appellant was driving his team on a street near the bridge—the bridge and its approaches being elevated above the street—and a locomotive drawing a heavy train was crossing the bridge and going in the direction of appellant. It is averred in the complaint that as the train approached near to where appellant was, the appellee "carelessly, negligently, recklessly,

and without any necessity whatever, caused the whistle of said locomotive to be blown," etc. It will be seen that the averments of the complaint in the Rodgers case are not so strong as in the case at bar, and yet the complaint was held good. It has many times been held that as a rule of pleading it is sufficient against a demurrer to charge the act resulting in injury as having been negligently or carelessly done. *Cincinnati, etc., R. Co.* v. *Gaines,* 104 Ind. 526; *Louisville, etc., R. Co.* v. *Jones,* 108 Ind. 551; *Pittsburgh, etc., R. Co.* v. *Hixon,* 110 Ind. 225; *Ohio, etc., R. Co.* v. *Walker,* 113 Ind. 196. Taking the complaint as true, appellant's servants were not in the exercise of any lawful or known duty in sounding the whistle when and where they did, and in the manner described. So far as it appears from the complaint, the sounding of the whistle in a loud, shrill, and continuous blast was the proximate cause of the death of the decedent, was a positive wrong, and hence actionable negligence. Other objections are urged to the complaint, but from what we have said, and the authorities cited, we must hold the complaint good.

Appellant argues that it was entitled to judgment on the answers to interrogatories, notwithstanding the general verdict in favor of appellee, and hence that the overruling of its motion for judgment was error. To determine this question, we must look to the facts found in answer to the interrogatories, and to that end will only record such facts as we deem of importance to a decision of the question. As abridged, the facts specially found are as follows: That on the day decedent was killed, he was in a mill-yard about ninety-two feet from appellant's road, near Bippus, Indiana, loading lumber on a wagon, to which a team of horses was attached; that said mill-yard was open to and used by the public for unloading logs and loading lumber; that on two previous occasions decedent had been there for the same purpose, and was driving the team which he had on the day he was killed; that trains passed while he was there on the

previous occasions; that on the previous occasions the whistle was not sounded when passing the point where he was; that on the day decedent was killed, he heard a train approaching from the west, heard the signal for the crossing, and he and his foster-son went to the head of his horses to hold them; that the act of decedent in taking his team where it was standing, under all the circumstances, was the act of a man of ordinary prudence and care; that the engineer, when near and west of the crossing of the highway, sounded the whistle in successive sharp and piercing whistles, and continued the same till he reached a point opposite where decedent was holding his horses; that said whistling frightened his horses, and caused them to run away; that said fright and running away caused his death; that it was not necessary, under the circumstances known to the engineer so to sound the whistle; that the view of the mill-yard where decedent and his team were was unobstructed for more than a quarter of a mile as the train approached. The jury also found that some of appellant's servants operating the train saw decedent, but do not state who, and that the said servants knew that the mill-yard was a public place where persons with teams were often engaged unloading logs and loading lumber. The above facts were elicited by answers to interrogatories submitted to the jury by the appellee, as is shown by the record. Appellant also submitted interrogatories, which were answered, and by such answers the following facts were specially found: That decedent, at the time of the accident, was standing with his team attached to a wagon in the mill-yard ninety-two feet north of the main track of appellant's road and east of the main street highway; that there was a clear view of the track from where his team stood for about a mile; that the horses decedent was driving had run away at least twice before; that the horses were not of a nervous disposition, were not easily frightened, and not disposed to run away; that the chain attached to decedent's wagon entwined itself around one of his arms and dragged him for a distance;

that where decedent's horses stood when the train approached was in full view to the west along appellant's track; that decedent had frequently hauled lumber from the same mill-yard; that the engineer in charge of the locomotive was a competent engineer; that he gave the usual crossing signals; that the train was running ten miles per hour; that the engineer gave the station signal east of the sawmill; that it is the duty of an engineer to sound his whistle at any point when in his judgment it is necessary; that there is no fixed distance from the station at which the whistle should be sounded; that the engineer did not see the decedent and his team immediately prior to the accident, and did not know they were in the mill-yard; that the engineer sits on the right hand of the engine; that the block or semaphore at the Bippus station showed danger signals as the train approached; that the engineer gave the usual call for the block or semaphore.

The fifth, sixth, and seventh assignments of error question the ruling of the court in overruling appellant's motion for judgment notwithstanding the general verdict, and in sustaining appellee's motion for judgment, and as they present substantially the same question, they may be considered together.

We enter upon this branch of the case with the fact in view that the jury, by their general verdict, found every fact in appellee's favor necessary to warrant a recovery. By the general verdict, the jury found the substantive fact that appellant was negligent as charged, and the corresponding and substantial fact that appellee's decedent was free from fault or negligence contributing to his death. To entitle a party to a judgment on answers to interrogatories, in the face of a general verdict in favor of his adversary, such answers, or some of them, must be in irreconcilable conflict with the general verdict.

After a careful examination and consideration of all the answers, we are unable to say that they, or any of them,

are in irreconcilable conflict with the general verdict. On the contrary, taken as a whole, they very strongly support the general verdict. True, one or more of the answers may state mere conclusions, but these may be very properly excluded, and, after considering those only that state facts, we do not find any conflict or inconsistency in them to the general verdict. The court did not err in overruling appellant's motion for judgment, nor in rendering judgment for appellee on the general verdict.

The eighth assignment of error questions the action of the court in overruling appellant's motion for a new trial. There are fourteen reasons assigned in the motion for a new trial, and we will consider them in the order in which counsel have discussed them. The first to the sixth reasons for a new trial may be considered together, as they relate to the sufficiency of the evidence to support the general verdict; the sufficiency of the evidence to support certain of the answers to interrogatories; that the general verdict is contrary to law, and certain of the answers to interrogatories are contrary to law. Upon an examination of the record, we find that there is ample evidence to support the general verdict and every material fact specially found, and any discussion of those questions would be useless.

Counsel for appellant next take up the discussion as to the admission and rejection of evidence. One Brune was examined as a witness for appellee. In his examination in chief he testified that the decedent's team was well broken and gentle. On cross-examination he was asked if he did not know of his own personal knowledge that it had run away or had attempted to run away. His answer was: "Well, I don't know any more than I have heard." He was then asked: "Well, did you hear it?" To which he answered: "I heard it; yes sir." On appellee's motion this evidence was stricken out. Appellee did not object to these questions when they were asked, nor state any ground in support of his motion to strike out the answers.

The general rule prevails that for the purpose of predicating error in the admission of evidence, or in striking it out, specific objections to its admission must be made, and the reasons clearly and fully stated for striking it out. In this instance this was not done, and, while there may have been an irregularity, we can not say that there was any error for which the judgment should be reversed. At most, the evi-dence elicited was hearsay, and we cannot believe that appellant was prejudiced or injured in the court's ruling. Pierce L. Lowman was called and testified as a witness for appellee. The fact was elicited from him that he was an experienced and expert locomotive engineer. The following questions were asked him: "Now then, I will repeat the question, whether or not, in your opinion as an engineer—as an expert, there is any necessity for blowing the whistle after a train has passed this crossing until it gets to the whistling post there? Ans. No sir." "Well, is there any necessity of whistling before the train reaches the whistling post? If so, state what that necessity is." Again, the witness is asked: "When is it proper for him [the engineer] to whistle?" Again: "You may state what necessity, if any, there is in whistling before they got to the crossing on this diagonal road." Also: "Whether or not there is any necessity for blowing his whistle before he reaches that crossing." "You may state what necessity there can be, or was there, to whistle before the train gets to the crossing, whether that is sufficient." "The question is, not whether it is necessary to whistle at all, but whether it is necessary to whistle west of that crossing, or whether it would be sufficient to whistle at the crossing." "Well, is there any necessity of whistling before the train reaches the whistling post? If so, state what that necesssity is." "Whether there is any necessity of the engineer whistling a half mile, or more than a half mile back, and whistling up here, which is about a half mile back." "Is there any necessity, or is it proper in good engin-eering, when near a public lumber-yard where teams are

liable to be, to make a succession of keen sharp whistles in
rapid succession?"  Over appellant's objections, which were
all specifically stated, the witness was permitted to answer
all these questions.  It is unnecessary for us to quote the
several answers, but it is sufficient to say that they were fa-
vorable to appellee, and in harmony with the fact suggested
by the questions.  Appellant urges that all these questions
elicited opinion evidence, and that such evidence was incom-
petent and harmful.  It is suggested that when all the facts
can be placed before a jury and they are of such a nature
that jurors are generally just as competent as a witness to
form an opinion in reference to and to draw inferences from
them, opinion evidence is not competent either from experts
or others.  Such evidence, counsel say, can be received only
when from necessity it is the best obtainable, and cite
*Brunker* v. *Cummins*, 133 Ind. 443.  In that case appellee
was a witness in his own behalf and was asked this question:
"You may state, Mr. Cummins, whether there was sufficient
room between where that barrel was and the wall for a man
to walk with safety."  He was permitted to answer it, and
the court, in passing upon its competency said:  "The court
violated the rule forbidding the expression of opinions by
witnesses, in allowing this testimony to go to the jury.  The
question called for an opinion upon two points, one, the neg-
ligence of the appellee, the other, the freedom from fault
of the appellant.  The question could not possibly be an-
swered without embracing in the answer the appellee's opin-
ion of what one using the walk could safely do, and upon
this point there could be no opinion without mentally decid-
ing the extent to which the walk was obstructed, and the
degree of care exercised by the person passing along it, so
that in answering the question the appellee, of necessity,
gave an opinion on two important points upon which it was
the exclusive province of the jury to formulate a judgment.
*    *    *    It is safe to assume at the outset, that where the
facts can be fully placed before the jury, opinion evidence,

even from experts, is incompetent if the facts are of such a nature that jurors are as well qualified to form an opinion upon them as the witnesses. * * * But even in cases where necessity justifies the expression of an opinion, the opinion can not go to the principal points which the law requires the jury to decide."

In *Elkhart, etc., R. Co.* v. *Waldorf*, 17 Ind. App. 29, it was held that the exclusion of expert evidence, where all the facts embodied in the offered evidence had already been given to the jury, and an opinion could have been readily formed by the jury, was not error. In *Ross* v. *Stockwell*, 19 Ind. App. 86, it was held reversible error to permit a witness to give his opinion as to the amount of damages covered by a failure of a landlord to make certain repairs for his tenant where the lease provided that the landlord would make such repairs. In a proceeding to lay out and construct a public highway, a witness can not give his opinion as to the public utility thereof. *Hughes* v. *Beggs*, 114 Ind. 427; *Thompson* v. *Deprez*, 96 Ind. 67; *Yost* v. *Conroy*, 92 Ind. 464, 47 Am. Rep. 156.

It was a material averment in appellee's complaint that the excessive and continued blowing of the whistle was the cause of the horses taking fright, and that such whistling was unnecessary. It was necessary for appellee to prove these averments by a fair preponderance of the evidence. It seems to us that the fact that the whistling was unnecessary could not properly be proved by opinion evidence. It would have been proper for appellee to show all the existing conditions and surroundings; to show where the usual crossing and station signals were given; the location of the highway and the station; the speed of the train; the danger signal, if any, as shown by the semaphore; the point at which decedent was standing holding his team; and when such facts were shown, the jury were as competent as any witness to determine as to the necessity or non-necessity of blowing the whistle as charged. It would not require one

possessing skill and experience as an engineer in railroading to express an opinion on the question. Where material evidence has been improperly admitted, it will be presumed to have improperly influenced the jury. *Baker* v. *Dessauer*, 49 Ind. 28; *Weik* v. *Pugh*, 92 Ind. 382.

The deposition of Catherine Coblentz was read, and in it appear the following questions and answers: (8) "Did you see the train coming?" Ans. "No sir, I heard it coming." (9) "Did it make a great noise?" Ans. "Yes sir. I told the old man at the time it was brutish the way they whistled." At the proper time appellant moved to suppress and strike out the latter clause of the· answer to question nine, which motion was overruled. After the deposition was read, the motion to suppress and strike out was renewed, and met the same fate. It would seem, from argument of counsel for appellee, that this evidence was admitted on the sole ground that it was a part of the *res gestae*. They do not attempt to maintain that it was competent upon any other ground. It is clear to us that it was not admissible unless as a part of the *res gestae*. The evidence shows that the witness was in her house, a square and a half away from the scene of the accident, and knew nothing of it until some time after. If we can consider this evidence as a part of the *res gestae*, then possibly it was admissible but not otherwise. In Abbott's Tr. Ev. (1st ed.) p. 589, it is said: "The declarations of any person present, made in the heat of the emergency, and forming a part of the incident and illustrating the nature, cause or extent of the wrong, may be proved as a part of the *res gestae*." The term *"res gestae"*, in its strict legal sense, means, "a thing done; the facts of a transaction; circumstances evidentiary of a litigated fact. The circumstances, facts, and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character." Anderson's Law Dict., p. 887. The rule has also been stated as follows: "All declarations made at the same time the main fact under consideration takes place and

which are so connected with it as to illustrate its character, are admissible as original evidence." *McLeod* v. *Ginther*, 80 Ky. 339, 403. "The area of events covered by the term *res gestae* depends upon the circumstances of each particular case." Included are those "circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act." Wharton on Ev., §§258, 259; 1 Greenlf. on Ev. §§108, 123; *United States* v. *Noelke*, 17 Blatch. 554, 1 Fed. 426; *United States* v. *Angell*, 11 Fed. 34. No inflexible rule has ever been and probably never can be adopted as to what is a part of the *res gestae*. It must be determined largely in each case by the peculiar facts and circumstances incident thereto; but it may be stated as a fixed rule that, included in the *res gestae* are the facts which so illustrate and characterize the principal fact as to constitute the whole one transaction, and render the latter necessary to exhibit the former in its proper effect. *Beaver* v. *Taylor*, 1 Wall. 637; *Little Rock, etc., R. Co.* v. *Leverett*, 48 Ark. 333, 3 S. W. 550; *Cluverius* v. *Commonwealth*, 81 Va. 787; *Travelers Ins. Co.* v. *Mosley*, 8 Wall. 397. "*Res gestae* are the facts surrounding or accompanying a transaction which is the subject of legal proceedings." 21 Am. & Eng. Ency. of Law, p. 99. Mr. Wharton, in describing the acts and incidents that make up the *res gestae*, says: "The *res gestae* may be therefore defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act, necessary in this sense, that they are part of the immediate preparations for, or emana-

tions of such act, and are not produced by the calculated policy of the actors." 1 Wharton on Ev. (2nd. ed.) §259. See *Hunter* v. *State*, 40 N. J. L. 538. The general rule is that evidence of words or acts may be admissible (notwithstanding the general rule against derivative evidence) on the ground that they form part of the *res gestae*, provided that the act which they accompany is itself admissible in evidence, and that they reflect light on or qualify that act. But they must be so connected with the main fact under consideration as to illustrate its character, or to form in conjunction with it one continuous transaction. 21 Am. & Eng. Ency. of Law p. 99.

We must consider the situation of the witness and her location as to the scene and surroundings of the main litigated act. She was a square and a half away from the place of the accident. She did not know of it until some time after it occurred. She did not know that the decedent was in the mill-yard, or that there was any peril in his situation. She was in the quiet and calm of her own home, in the presence of her husband. She was not surrounded by any circumstances to excite her mind or arouse her emotions. She had no possible connection with the main fact to be litigated. She was not a bystander, and, so far as the litigated facts are concerned, was an entire stranger, except she heard the sound of the whistle. These are not the declarations of a person present, nor were they made in the heat of the emergency. They had nothing to do in illustrating the nature, cause, or extent of the wrong done. What the witness said to her husband in the quiet of their home could not have been a part of the *res gestae*, and we must so hold.

In this jurisdiction the rule is well settled that where immaterial evidence is admitted, it is harmless, because such evidence could not have influenced the verdict; but where material evidence is improperly admitted, and there is a probability that it worked injury, it will be sufficient to warrant a reversal. *Morningstar* v. *Musser*, 129 Ind. 470,

and authorities cited. And such evidence will be presumed to have influenced the verdict unless the contrary appears. *Medsker* v. *Pogue*, 1 Ind. App. 197; *Weik* v. *Pugh*, 92 Ind. 382; *Baker* v. *Dessauer*, 49 Ind. 28. The very fact that the trial court overrules an objection to evidence, and also overrules a motion to strike out evidence, sends such evidence to the jury with additional effect, and hence authorizes the jury to consider it, and it will be presumed to have influenced the result. *Brunker* v. *Cummins*, 133 Ind. 443; *Indianapolis, etc., Co.* v. *Pugh*, 6 Ind. App. 510.

When incompetent evidence which is immaterial and irrelevant is admitted, it will be presumed to have affected the result unless the contrary is made to appear. *King* v. *Enterprise Ins. Co.*, 45 Ind. 43; *Thompson* v. *Wilson*, 34 Ind. 94; *Mays* v. *Hedges*, 79 Ind. 288 at page 293. Where evidence is both immaterial and irrelevant, and yet has a tendency to mislead the jury, direct their minds into improper channels, excite and enlist their sympathies in favor of one or the other of the parties, or to arouse their prejudice against the opposite party, its admission is reversible error. *Orr* v. *Miller*, 98 Ind. 436, 443. While it is true that when the witness said, "I told the old man at the time it was brutish the way they whistled," it was not responsive to the question, and was a voluntary statement, yet it referred to a vital fact in the case and must have impressed upon the minds of the jury with peculiar effect and force such fact, and at least had a tendency to excite the sympathies and arouse the prejudice of the jury. Appellee insists that the evidence was competent as a part of the *res gestae*, and upon no other ground, but we have seen that it was not a part of the *res gestae*, and no pretense is made that its admission could be upheld upon any other basis. We must be governed by the rules of evidence as fixed by an unbroken line of authorities. The evidence we have been considering was not proper to go to the jury, and as it does not appear from the record that it was harmless, we must presume that was so.

Other questions are discussed, but they are not likely to arise upon a subsequent trial of the cause and need not be considered. Judgment reversed, with directions to the court below to grant appellant a new trial, and for further proceedings not inconsistent with this opinion.